OPINION
{¶ 1} The following appeal was submitted on the briefs of the parties. Appellant, Robert Noda, appeals from a judgment entry of the Lake County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor daughter, Deserie Noda ("Deserie"), to appellee, Lake County Department of Job and Family Services ("LCJFS"). For the reasons that follow, we affirm.
 {¶ 2} This appeal involves Deserie, born on August 17, 1993, the biological child of appellant. Deserie's biological mother is Lynette Toth ("Lynette") who is not a party to this appeal. On April 17, 2003, LCJFS obtained emergency temporary custody of Deserie.
 {¶ 3} On that date, United States Custom Officers and police officers of the Madison Township Police Department conducted a raid pursuant to a federal search warrant of a home located in Madison, Ohio, where Deserie, appellant, and Lynette, resided. Appellant and Lynette were arrested on that same day and incarcerated in the Lake County Jail.
 {¶ 4} On June 25, 2003, appellant was indicted and later convicted in the United States Federal District Court of Northern Ohio of aiding and abetting the receipt of child pornography by computer, and aiding and abetting the possession of child pornography by computer. Appellant's sentence was rendered on February 10, 2004, and imposed an aggregate prison term of 132 months (eleven years).
 {¶ 5} Lynette was charged with attempted possession of child pornography by computer. On June 4, 2004, Lynette, pursuant to a plea agreement, was sentenced to a prison term of 24 months (two years).
 {¶ 6} On April 18, 2003, James R. Flaiz ("Flaiz") was appointed as Deserie's guardian ad litem. Also on that date, separate counsel was appointed for appellant and Lynette.
 {¶ 7} On July 16, 2003, LCJFS filed a complaint with the juvenile court asserting that Deserie was a neglected and dependent child pursuant to R.C. 2151.03(A)(2) and (3).
 {¶ 8} Appellant filed a motion for supervised visitation with Deserie, alleging that his bond pending in the federal case had been modified to permit supervised visits with Deserie. A pretrial hearing on appellant's motion for supervised visitation was held and the court ordered the motion for supervised visitation to remain pending.
 {¶ 9} On October 6, 2003, an adjudicatory hearing commenced before a magistrate. Both appellant and Lynette were present with counsel. The parties stipulated that Deserie was a dependent child and the claim of neglect was dismissed. The magistrate issued a decision adopting the stipulation and found clear and convincing evidence that Deserie was dependent under R.C. 2151.04. At a dispositional hearing held the same day, the magistrate ordered temporary custody of Deserie to remain with LCJFS, and also ordered the scheduling of a contested case plan hearing. The court issued a judgment entry adopting the magistrate's decision.
 {¶ 10} On October 21, 2003, LCJFS filed an amended case plan with the court. While not at issue on appeal, the original case plan is not in the record. Lynette filed a motion for parenting time, alleging she was residing in the family home in Madison while awaiting sentencing in federal court on the aforementioned charges.
 {¶ 11} On December 2, 2003, the court held a contested case plan hearing. Although notified by certified mail, neither appellant nor Lynette appeared at the hearing. Appointed counsel for both appellant and Lynette were present. Appellant was incarcerated at the time, and the court found the case plan moot as to appellant. Appellant, through counsel, reserved the right to challenge the case plan and the issue of visitation once his status as a federal prisoner changed.
 {¶ 12} Lynette's counsel stated that she agreed with some of the case plan goals; namely, for drug and alcohol assessment, parenting classes, and the continuance of the health and basic needs of Deserie under the control of LCJFS.
 {¶ 13} The court ordered the case plan adopted as to Lynette's agreed upon goals and ordered any further hearing on her case plan recommendations stayed until after Lynette's sentencing hearing. The court also ordered a stay of Lynette's request for parenting time.
 {¶ 14} On April 13, 2004, a second amended case plan and semiannual review was filed with the court. The court adopted the semiannual review and case plan, which recommended that Deserie remain in the temporary custody of LCJFS. The court further ordered appellant and Lynette to accomplish the following objectives: (1) obtain a sexual offender's assessment with a qualified mental health professional and follow all the recommendations; (2) complete a drug and alcohol assessment and follow all recommendations; (3) complete age appropriate parenting classes; and (4) complete mental health evaluations and follow all recommendations.
 {¶ 15} On April 15, 2004, LCJFS filed a motion for permanent custody of Deserie and, pursuant to RC 2151.413, requested adoptive placement. A pretrial hearing on the motion for permanent custody was held on June 17, 2004. Appellant was notified of the hearing by certified mail, but was not present. He was incarcerated at the time, serving the federal prison sentence at a correctional facility in Lexington, Kentucky. Lynette, whose whereabouts at the time were unknown, was notified of the pretrial hearing through publication. At the time of the hearing, she was incarcerated, and was not present.
 {¶ 16} During the hearing, the court noted that the case plan goal requiring the parents to obtain sexual offender's assessments and to follow the recommendations of such assessments was contested and, therefore, the court ordered that case plan goal stricken as erroneously adopted by the judgment of April 13, 2004. Lynette's motion for parenting time was ordered moot, due to her incarceration in another state.
 {¶ 17} Flaiz filed his guardian ad litem report which recommended that LCJFS be granted permanent custody of Deserie.
 {¶ 18} The motion for permanent custody was scheduled for a two-day hearing that was to commence on July 7, 2004, and conclude on July 19, 2004. Due to medical clearance problems, appellant moved for a continuance, which was granted by the court. Subsequently, LCJFS moved for a continuance of the July 19, 2004 hearing, to have sufficient time to arrange for the transport of appellant from the Kentucky Federal Prison. The hearing was ultimately held on September, 20, 2004, with appellant present.
 {¶ 19} Although she was notified by certified mail, Lynette was not present at the permanent custody hearing. Lynette was incarcerated at that time, serving her 24-month sentence in a Connecticut Federal Prison. This sentence commenced on June 4, 2004. Lynette's counsel was present at the hearing and stated that his client did not want to attend the hearing.
 {¶ 20} On November 18, 2004, the court issued a judgment granting permanent custody of Deserie to LCJFS. Within its judgment entry, the juvenile court determined that Deserie could not be placed with either parent within a reasonable time, and that Deserie had been in the custody of LCJFS for twelve or more months during a consecutive twenty-two month period. The court further stated, "the Court finds, by clear and convincing evidence, that it is in the best interests of the child, Deserie, that her permanent custody be lodged in a public agency for adoption."
 {¶ 21} The court found that Deserie had no interactions or contact with her parents since April 2003. Deserie also had no interactions with siblings, or relatives. The court also determined that a close and growing relationship was evolving between Deserie and her foster parents, including other children in the foster family. The court also found the following: (1) that Deserie "* * * expressed a desire not to live with her parents. She also is aware of these proceedings generally and has expressed a desire to be adopted by her foster parents."; (2) Deserie "* * * has been in the custody of the department [LCJFS] since April 18, 2003 and out of contact with her parents continuously since that time."; (3) Deserie "* * * needs such a placement for any sort of long range consistent nurturing and development."; (4) "the parents are not available and of doubtful fitness for her placement and custody."; and (5) "* * * both parents were incarcerated under lengthy sentences at the time of filing of this motion for permanent custody."
 {¶ 22} It is from this judgment that appellant filed a timely notice of appeal and presents the following assignment of error for our consideration:
 {¶ 23} "The trial court erred in granting the motion for permanent custody as the court's findings are not supported by clear and convincing evidence."
 {¶ 24} At the outset, we note it is well established that a parent's right to raise a child is an essential and basic civil right. In reHayes (1997), 79 Ohio St.3d 46, 48. The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. In re Hoffman, 97 Ohio St.3d 92, 2002 Ohio 5368, at ¶ 14. See, also, In re Smith (1991), 77 Ohio App.3d 1, 16. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) Hayes at 49.
 {¶ 25} That being said, R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 26} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999.
 {¶ 27} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 28} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 29} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 30} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances delineated in R.C.2151.414(B)(1)(a) through (d) is present. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb
(1985), 18 Ohio St.3d 361, 368.
 {¶ 31} In the context of terminating parental rights, our standard of review on appeal is whether the juvenile court abused its discretion. Inre Snow, 11th Dist. No. 2003-P-0080, 2004-Ohio-1519, at ¶ 28. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 32} Initially, we note that the court's decision went beyond the basic statutory requirements set forth above. Under the statute, the court may grant permanent custody to an agency where it finds that any one of the four circumstances in R.C. 2151.414(B)(1)(a) through (d) have been met, and that placement with the agency is in the best interest of the child. In the instant case, the juvenile court found two of the four criteria set forth in R.C. 2151.414(B)(1)(a) through (d) to be applicable. Appellant challenges only with respect to the finding that Deserie could not be placed with either of her parents within a reasonable time.[1] Therefore, even if we were to sustain appellant's assignment of error, the appeal would not necessarily be with merit.
 {¶ 33} Under his sole assignment of error, appellant contends that the evidence did not support a finding that Deserie could not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1). We disagree.
 {¶ 34} As to appellant, the court satisfied the requirement which provides that the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if the court finds that the parent is incarcerated at the time of the dispositional hearing and will not be available to care for the child for at least eighteen months." R.C. 5121.414. (E)(12).
 {¶ 35} The court found that appellant was incarcerated at the time of the September 20, 2004 hearing for permanent custody serving his eleven-year federal prison term.[2] That finding is supported by the record and evidence presented at the hearing. Jaime Lette ("Lette"), a caseworker from LCJFS, testified that appellant's potential release date is April 30, 2013. Certified copies of appellant's sentence were also admitted into evidence.
 {¶ 36} Appellant asserts that his federal conviction is on appeal, which was also a finding by the court. However, other than the pending appeal, no other evidence that appellant would be subject to an early release was presented. The possibility of release based upon appeal is far too speculative for the court to find that Deserie could be placed with appellant within a reasonable time. In re Hederson (1986),30 Ohio App.3d 187, 189, ("the trial court cannot be faulted for rejecting speculative projections concerning the length of the [father's] incarceration"). See, also, In re Brown, 11th Dist. No. 2004-L-027, 2004-Ohio-3337, at ¶ 13. As such, appellant's argument is not welltaken.
 {¶ 37} Appellant also asserts that Deserie could be placed within a reasonable time with her mother, Lynette.
 {¶ 38} First, we must determine whether appellant has standing to raise this legal issue, as Lynette has not filed an appeal and is not a party to this appeal.
 {¶ 39} An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. In re Goff, 11th Dist. No. 2003-P-0069, 2003-Ohio-6089, at ¶ 13. Thus, appellant's challenge is limited to whether the trial court's termination of Lynette's parental rights prejudiced him.
 {¶ 40} Although we find it curious that no waiver from Lynette regarding the permanent custody was obtained, no evidence was offered by appellant at trial to demonstrate that his interests were aligned with Lynette in any alleged plan of reunification.
 {¶ 41} Lynette was represented by appointed counsel throughout these proceedings. On the first day of the permanent custody hearing, legal counsel for Lynette indicated that she had instructed him in writing on how to proceed, to wit:
 {¶ 42} "Mr. DiFranco: * * * And in that letter she did indicate that she is aware of the hearing and said she gave me instructions with regard to how she wished for me to proceed during this hearing."
 {¶ 43} On the hearing date of September 20, 2004, once again Lynette was not present, and her counsel explained her failure to appear as follows:
 {¶ 44} "Mr. DiFranco: Well Judge, last time we were here in court I represented that my client had instructed me that she did not want to be present and instructed me so in writing. And accordingly, I have not filed a writ or anything to the court to have her present."
 {¶ 45} Mr. DiFranco also noted that he had faxed and mailed copies of "everything since our last hearing." Further, Lette testified that she met with Lynette on June 16, 2004, at the Mahoning County Jail, and talked with her about the pending motion for permanent custody. Lette testified that Lynette stated she was not going to contest the matter.
 {¶ 46} Clearly, the record demonstrates that Lynette did not contest LCJFS's motion for permanent custody. Because Lynette did not contest the motion for permanent custody, appellant has not demonstrated that the termination of her parental rights adversely impacted his parental rights. Thus, this portion of appellant's assignment of error is not well-taken.
 {¶ 47} In addition, the court's determination in this case that Deserie could not be placed with Lynette in a reasonable time is supported by the record. Lette testified at the permanent custody hearing that Lynette's expected date of release was September 11, 2005, and although her period of expected incarceration is less than 18 months from the date of the dispositional hearing, there was further testimony by Lette to indicate that Lynette would not be able to care for Deserie for several months after her release.
 {¶ 48} At the contested plan hearing on December 2, 2003, the court ordered Lynette to attend parenting classes, and drug and alcohol assessment.[3]
 {¶ 49} As of the date of the permanent custody hearing, Lynette had not worked on those goals, although she was incarcerated. Upon Lynette's release from prison, the case plan would have to be amended regarding the issue of the no contact order, since contact with her child Deserie was not excepted from that order. Lynette would have to undergo drug and alcohol assessment and LCFJS would require a sexual offender assessment as well. All of this would take an extended period of time and Deserie had already been in the custody of the LCJFS since April 17, 2003. For this additional reason, we find appellant's argument is not well-taken.
 {¶ 50} Appellant also argues that the trial court erroneously found that a legally secure permanent placement could not be achieved for Deserie without granting LCJFS permanent custody. Specifically, appellant contends that LCJFS failed to consider potential non-relative custodians; namely, Jeffrey and Ashley Nero, and Bob and Jean Mitch, alleged godparents to Deserie. We disagree.
 {¶ 51} There is evidence in the record that LCJFS made reasonable efforts to locate relatives through names provided by Lynette early on in these proceedings. Melanie Hale, an LCJFS caseworker supervisor, testified that LCJFS contacted the following relatives: Kyle Noda, Sheryl Bartell, and Ellen Kerber. Unfortunately, as the record reflects, no relatives were able to assume care and custody of Deserie. Furthermore, appellant testified that when he was asked by LCJFS for the names of relatives for placement of Deserie, he did not provide the names of any relatives because they were "either too old or passed away." It appears from the record that appellant did not mention the name Jeffrey Nero as a possible custodian until the very day of the permanent custody hearing. Appellant testified that he was a guardian for Jeffrey Nero and that Jeffrey Nero resided with his family for a time. We note, however, no motions by Jeffrey Nero have been filed in this matter.
 {¶ 52} Lette testified that Lynette first mentioned the names of Bob and Jean Mitch on June 6, 2004, at a meeting with Lynette in the Mahoning County Jail, after Deserie had already been placed in her foster home. Lette explained that Deserie had been visiting with her foster family over the course of the preceding months and a bonding relationship was already developing. The Mitches, who were not relatives, provided foster care placement for Lynette when she was removed from her mother's custody, and were Deserie's godparents. No evidence was offered that the Mitches had any ongoing relationship with Deserie, and no motion by the Mtiches have been filed in this matter.
 {¶ 53} There was ample evidence that LCJFS made reasonable efforts to locate any suitable relatives, but none were available for Deserie's placement on an ongoing basis. As such, this portion of appellant's alleged error is not well-taken.
 {¶ 54} Finally, appellant asserts error by the trial court upon its findings that it was Deserie's wish not to live with her parents. We disagree.
 {¶ 55} Appellant contends that Deserie was not aware of Lynette's potential release date of September 11, 2005, and that this lack of knowledge may have unduly affected Deserie's wishes of placement and adoption. Lette testified that while she did not discuss with Deserie the exact date of Lynette's potential release, Deserie was aware of the approximate time frame of Lynette's incarceration.
 {¶ 56} Further testimony was offered by Lette that Deserie requested adoption, rarely asked about her parents, and had a strong relationship with foster family. Deserie was now bonding with her foster family and the foster parents wanted to adopt her.
 {¶ 57} Flaiz filed a detailed guardian ad litem report supporting his conclusion that it was in the best interest of Deserie for the court to grant LCJFS's motion for permanent custody. Deserie expressed her desire to be adopted. Deserie and Flaiz had a long conversation in June 2004 regarding the permanent custody proceeding, and he determined that Deserie, who was ten years old at the time, had a "fairly good understanding" of the process. Flaiz further testified that he was unaware of Lynette's potential release date. However, he stated that he discussed with Deserie aspects of her life, before and after LCJFS took custody of her, and that she "didn't become overly emotional when I spoke to her about it. She didn't really become upset regarding her parents." Based upon the testimony, appellant's argument is not well-taken.
 {¶ 58} Appellant also asserts that Lynette will be able to be reunited with Deserie in September 2005. We do not agree. As the record demonstrates, upon her release from prison, Lynette will be prohibited from having any unsupervised contact with Deserie.
 {¶ 59} For the foregoing reasons, appellant's sole assignment of error is without merit. The judgment of the Lake County Common Pleas Court, Juvenile Division, is affirmed.
Ford, P.J., O'Neill, J., concurs.
[1] Appellant does not challenge the court's finding under R.C.2151.414(B)(1)(d), i.e., that Deserie has been in the temporary custody of LCJFS for twelve or more months out of a consecutive twenty-two month period.
[2] As a part of its findings of fact and conclusion of law, the court incorrectly stated that the appellant's expected date of release from prison is approximately one year from date of the judgment entry. However, later in that same document, the court correctly noted that appellant is serving an eleven year prison term.
[3] Lynette did not appear at this hearing. Her whereabouts were unknown but her counsel indicated that Lynette would agree to the case plan requirements of parenting classes and drug and alcohol assessment.