OPINION
{¶ 1} On this accelerated appeal, appellant, Willie Dentigance, the biological father of Alexous Jones-Dentigance, appeals the May 27, 2005 judgment of the Portage County Court of Common Pleas, Juvenile Division, granting the Portage County Department of Job and Family Services' ("PCDJFS") Motion for Permanent Custody of Alexous and the court's denial of Alexous' paternal grandmother, Mary Mikel's motion to intervene and motion for permanent custody. We affirm the decision of the lower court.
 {¶ 2} Alexous was born on June 10, 2003. At birth, Alexous tested positive for cocaine. In addition to Alexous' addiction at birth, she suffers from chronic asthma, for which she receives daily breathing treatments. Alexous has been hospitalized twice since birth for asthma attacks. According to testimony from Dr. Aldrich, Alexous' pediatrician, Alexous' asthma is currently under control, but may be triggered by exposure to cigarette smoke, dust mites, and chemicals, among other causes. In addition to her asthma, Alexous also suffers from gastro-esophogeal reflux disease.
 {¶ 3} On June 12, 2003, PCDJFS removed Alexous from the custody of her mother, Laura Jones, and filed a complaint in the Portage County Court of Common Pleas, seeking temporary custody of the child. On July 18, 2003, Alexous was adjudicated a dependent child by the Portage County Court of Common Pleas, Juvenile Division. Alexous was in the temporary legal custody of PCDJFS pursuant to a dispositional order in August 2003. Jones last saw Alexous when she was a week old. Alexous has been in foster care since she was nine days of age, and has lived with the same foster parents since that time, as well as her half-sister, Brionna, who was placed with the same foster family in March 2005. Jones, who is incarcerated, permanently and voluntarily surrendered her parental rights as part of the underlying proceeding and is not a party to this appeal.
 {¶ 4} Appellant is also currently incarcerated, pursuant to his guilty plea for Trafficking in Cocaine, Possession of Cocaine, and Tampering with Evidence. Appellant has been adjudicated a sexually oriented offender, following his earlier conviction and sentence for Rape, Felonious Assault, Kidnapping, and two counts of Aggravated Burglary. Appellant is not due to be released from his current incarceration until October of 2006. Thereafter, appellant is subject to post release control, the conditions of which include that he is to continue to register once a year as a sex offender until 2012 and that he is to have no unsupervised contact with minor children.
 {¶ 5} On March 14, 2005, PCDJFS filed a motion for permanent custody of Alexous, pursuant to R.C. 2151.413. On May 4, 2005, appellant's mother, through appellant's attorney, filed a joint motion to intervene and motion for legal custody of Alexous.
 {¶ 6} On May 13, 2005, the matter proceeded to hearing. At the hearing, the court heard testimony from appellant, as well as others, including Alexous' pediatrician, a clinical psychologist who interviewed and evaluated appellant, a representative from the State of Ohio Adult Parole Authority, representatives from both PCDJFS and the Cuyahoga County Department of Job and Family Services, and Alexous' guardian ad litem. Mikel was also scheduled to testify at the hearing, but did not appear. Appellant's counsel requested a continuance, for the purposes of securing Mikel's testimony, but the court denied this request.
 {¶ 7} On May 27, 2005, the court entered judgment granting permanent custody to PCDJFS. Appellant timely appealed, asserting three assigned errors for review:
 {¶ 8} "[1.] The trial court erred in denying the grandmother's motion to intervene.
 {¶ 9} "[2.] The trial court erred in denying appellant's motion for the child to be placed in the legal custody of the grandmother.
 {¶ 10} "[3.] The trial court erred in denying appellant's motion to continue the permanent custody hearing to secure the grandmother's testimony."
 {¶ 11} In his first assignment of error, appellant relies on the Ohio Supreme Court's holding in In re Schmidt (1986), 25 Ohio St.3d 331, to argue that the court erred in denying Mikel's motion to intervene. We disagree.
 {¶ 12} In reviewing an order denying a motion to intervene, an appellate court considers whether the trial court abused its discretion.In re Hoffman, 5th Dist. Nos. 2002CA0419, 2002CA0422, 2003-Ohio-1241, at ¶ 20, citing Peterman v. Pataskala (1997), 122 Ohio App.3d 758, 761. An abuse of discretion is more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169 (citation omitted).
 {¶ 13} Schmidt held that, in general, grandparents have no constitutionally protected right or legal interest to custody or visitation of their grandchildren. 25 Ohio St.3d at 336. However, in a separate concurrence, then Chief Justice Celebrezze stated, in dicta, that "[i]ntervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectible interest in custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild." Id. at 338 (Celebrezze, C.J. concurring). Appellant relies on the language of the Schmidt concurrence to argue that Mikel acted in loco parentis, on the basis of her expressed interest in taking care of Alexous, her consent to participate in the home study, and her regular visits with Alexous to "establish bonding and make the transition to her home less traumatic." Appellant's reliance on Schmidt is misplaced.
 {¶ 14} We initially note, with respect to the aforementioned assignment of error, Mikel's motion to intervene was submitted as a joint motion filed by appellant's attorney on May 4, 2005, nine days before the custody hearing. R.C. 2151.353(A)(3) provides that a court may award legal custody of an adjudicated dependent child "to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" In the instant matter, there is no indication in the record that appellant's attorney was acting on behalf of Mikel, or that Mikel caused this motion to be filed on her own behalf.
 {¶ 15} Even if we were to accept the motion to intervene was validly filed on behalf of Mikel, there is no evidence in the record that Mikel ever acted in loco parentis as claimed. "`Loco parentis' exists when [a] person undertakes care and control of another in absence of such supervision by [the] latter's natural parents * * *." In re Burmeister
(Apr. 14, 1999), 9th Dist. No. 19157, 1999 Ohio App. LEXIS 1721, at *11, citing Black's Law Dictionary (6 Ed.Rev. 1990) 787. There is no evidence in the record that Mikel ever assumed responsibilities for the care and control of Alexous. Expressing an interest in taking custody of Alexous, by consenting to a home study, and engaging in supervised visitation in the absence of visitation rights granted under R.C. 3109.12(A), do not, as a matter of law, grant "a legal right to or a legally protectible interest in custody or visitation." Schmidt, 25 Ohio St.3d at 338
(Celebrezze, C.J. concurring); see also In re Mourey, 4th Dist. No. 02CA48, 2003-Ohio-1870, at ¶ 21 (under Civ.R. 24(A), "[a] person must possess a statutory right or a legal interest in the subject matter of an action in order to possess a right to intervene"). Moreover, Mikel has not appealed the trial court's denial of her motion to intervene. It is well-settled that an appealing party may only complain of an error committed against a non-appealing party, when appellant can demonstrate that the error was prejudicial to his rights. In re Goff, 11th Dist. No. 2003-P-0069, 2003-Ohio-6089, at ¶ 13 (citations omitted); In re Noda,
11th Dist. No. 2004-L-212, 2005-Ohio-2213, at Noda, 2005-Ohio-2213, at ¶ 39. Appellant does not and cannot demonstrate prejudice on the basis of Mikel's exclusion as a party to the proceeding. Accordingly, appellant's first assignment of error is without merit.
 {¶ 16} In his second assignment of error, appellant argues that the court erred in denying his motion requesting that Alexous be placed in the legal custody of the grandmother. We disagree.
 {¶ 17} The standards for ruling on a motion for permanent custody and termination of parental rights are governed by R.C. 2151.414. Pursuant to R.C. 2151.353(A)(4), a trial court may commit a dependent child to the permanent custody of the children's services agency upon a finding, by clear and convincing evidence, that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable amount of time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child able to take permanent custody, and; (d) the child has been in the temporary custody of one or more public or private children's services agencies or child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable amount of time or should not be placed with the child's parents. R.C. 2151.414(B); Noda, 2005-Ohio-2213, at ¶ 26; Goff,
2003-Ohio-6089, at ¶ 6.
 {¶ 18} If any of the preceding elements are found by clear and convincing evidence, the court is then obligated to ascertain, by clear and convincing evidence, what is in the best interest of the child.Noda, 2005-Ohio-2213, at ¶ 29; Goff, 2003O-hio-6089, at ¶ 7. In making a permanent placement determination based upon the best interest of the child, the court is required to consider all relevant factors under R.C.2151.414(D), including but not limited to: (1) the interrelationship and interaction of the child with parents, siblings, relatives, foster caregivers and out-of-home care providers, and any other person who may significantly affect the child; (2) the wishes of the child, if ascertainable, or as expressed through the child's guardian ad litem with due regard for the child's maturity; (3) the custodial history of the child; (4) the child's need for a legally secure placement, and whether this can be achieved without a grant of permanent custody to an agency, and; (5) whether any of the factors of R.C. 2151.414 (E)(7)-(11) apply.Noda, 2005-Ohio-2213, at ¶ 29; Goff, 2003-Ohio-6089, at ¶ 7; In reSmith, 11th Dist. No. 2002-A-0098, 2003-Ohio-800, at ¶¶ 9-10. Clear and convincing evidence is more than a mere preponderance of the evidence, but is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reHolcomb (1985), 18 Ohio St.3d 361, 368 (citation omitted).
 {¶ 19} In its judgment entry, the court found specifically that Alexous had continuously been in the custody of the PCDJFS since the Shelter Care Hearing conducted on June 13, 2003, and has been officially considered in Temporary Custody pursuant to a dispositional order since August 12, 2003, and that, as of the date of the filing of the Motion for Permanent Custody, Alexous had been in the temporary custody of PCDJFS for nineteen consecutive months.
 {¶ 20} The court then considered the "best interest" factors, and made the following findings relevant to this appeal:
 {¶ 21} With respect to the first factor, the court found that Alexous has "little bond with her father," since he has been incarcerated and that, prior to his incarceration, appellant made efforts to interact with his daughter on a regular basis, but she did not interact well with him. The court likewise found that Alexous had a strong bond with her foster parents, and with her half-sister Brionna, but "no bond with any paternal relatives."
 {¶ 22} As to Alexous' own wishes, the court found that at her current age of 23 months, she was too young to express her wishes in the matter, but that Alexous' guardian ad litem, Holly Keres Farah, recommended that Alexous needed a legally secure permanent placement and that "neither of her parents or relatives can provide that for her," and, therefore, Farah recommended that Alexous be placed in permanent custody of PCDJFS for the purposes of adoption.
 {¶ 23} The court also found that Alexous, had been in the custody of PCDJFS for a period of 19 months prior to the date of the filing of the Motion for Permanent Custody, and has been in the same foster home since June 13, 2004, and that her half-sister has been in the same foster home since March of 2005.
 {¶ 24} Considering the fourth factor, the court found that Alexous has a need for legally secure permanent placement, and that placement cannot be achieved without granting Permanent Custody to PCDJFS. The court cited as its reasons that Alexous' mother was incarcerated and signed a voluntary permanent surrender of her parental rights; that appellant is likewise currently incarcerated and, as a condition of his parole is precluded from having unsupervised contact with minors, which precludes him from providing a safe and stable environment. The court then considered appellant's request that his mother be considered as a relative placement. The court noted that pursuant to this request, PCDJFS asked the Cuyahoga County Department of Job and Family Services to conduct a home study. The court concluded on the basis of the home study, as well as testimony from various witnesses, that placement with Mikel was not in Alexous' best interest because of Mikel's age and health, her questionable ability to care for Alexous' health concerns, and concerns for Alexous' safety, with respect to making certain Alexous is not left unsupervised or that she does not reside in the same home with her father. The court also found that although Mikel showed some involvement with Alexous, she only visited Alexous a little more than half of the time made available to her for doing so, and that Mikel had not visited Alexous since December of 2004. On this basis, the court found that there were no other appropriate relative placements for Alexous, and it would be in her best interest to remain with her sister Brionna, so that both children may be placed for adoption as siblings.
 {¶ 25} The court found no other factors in issue pursuant to 2151.414(E)(7)-(11).
 {¶ 26} Based on our review of the aforementioned findings, we conclude that the court considered all of the required statutory factors, including whether Mikel would be an appropriate guardian, under the fourth factor of the "best interest" analysis. In doing so, we find there was clear and convincing evidence to support the court's judgment granting permanent custody to PCDJFS. Though a "children services agency should strive to place a child with a willing and suitable relative[,]" there is no requirement or duty on the agency to do so under a best interest analysis. In re Brown, 11th Dist. No. 2004-L-027, 2004-Ohio-3337, at ¶¶ 11-14. Appellant's second assignment of error is without merit.
 {¶ 27} In his third assignment of error, appellant argues that the trial court erred by not granting a reasonable motion for continuance, to allow Mikel to testify at trial. The record reflects that Mikel, who did not drive, was lost on the way to appear at the proceeding, and, believing that she had missed the hearing, decided to return home. Appellant's counsel contacted Mikel by phone during the lunch break, and requested that she appear at the proceeding. Mikel was called to the stand approximately two hours after the break, but she did not appear to testify. Appellant's counsel then moved for a continuance, which was denied.
 {¶ 28} The grant or denial of a motion to continue a hearing is a matter within the discretion of the trial court, and will not be overturned by an appellate court absent a demonstration that the trial court abused its discretion. In re Baby Girl Doe, 149 Ohio App.3d 717,2002-Ohio-4470, at ¶ 55 (citations omitted).
 {¶ 29} Our review of the record reveals that Mikel was not subpoenaed as a witness, though she did appear on appellant's list of potential witnesses on appellant's behalf. Appellant has offered no evidence as to what Mikel's testimony might have been, but since appellant is not appealing the termination of his parental rights, we can only conclude that the only relevant testimony Mikel would have offered relates to her motion for legal custody of Alexous. Based upon our determination that there was clear and convincing evidence in the record supporting Alexous' permanent placement with PCDJFS, we conclude that the court did not abuse its discretion in overruling appellant's motion for continuance. Appellant's third assignment of error is without merit.
 {¶ 30} For the foregoing reasons, we affirm the judgment of the Portage County Court of Common Pleas, Juvenile Division.
Ford, P.J., concurs,
MARY O'TOOLE, J., dissents, with a Dissenting Opinion.