[Cite as *In re M.C.*, 2020-Ohio-4372.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE: M.C., JR.        :       JUDGES:
                                      :       Hon. William B. Hoffman, P.J.
                                      :       Hon. John W. Wise, J.
                                      :       Hon. Earle E. Wise, Jr., J.
                                      :
                                      :
                                      :       Case No. 2020CA00049
                                      :
                                      :       <u>O P I N I O N</u>


CHARACTER OF PROCEEDING:           Appeal from the Court of Common
                                                  Pleas, Case No. 2017JCV00743


JUDGMENT:                           Affirmed


DATE OF JUDGMENT:                 September 8, 2020


APPEARANCES:

For Plaintiff-Appellant                         For Defendant-Appellee

DEAN L. GRASE                               BRANDON WALTENBAUGH
700 Courtyard Centre                       402 2nd Street SE
116 Cleveland Avenue NW              Canton, OH  44702
Canton, OH  44702

*Wise, Earle, J.*

{¶ 1}   Appellant C.S., legal custodian, filed this appeal from the judgment entered in Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents and legal custodian with regard to the 11-year-old child, M.C., Jr. (M.C.) and ordered that permanent custody of the minor child be granted to Stark County Department of Job and Family Services, (SCJFS).

{¶ 2}   This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:

FACTS AND PROCEDURAL HISTORY

{¶ 3}   This appeal pertains to the permanent custody disposition of M.C, whose date of birth is April 15, 2008. M.C. Senior is the child's natural father. R.S. is the child's natural mother. Appellant is the child's maternal grandmother and legal custodian. C.S. gained legal custody of M.C. through a private change of legal custody from mother to C.S. at some point prior to SCJFS involvement in the instant matter.

{¶ 4}   On July 1, 2017, SCJFS filed a complaint alleging dependency/neglect of M.C. An emergency shelter care hearing was held the same day and M.C. was placed in the emergency temporary custody of SCJFS through Juv.R. 6. Concerns included deplorable conditions in Appellant's home and her inability to adequately address M.C's profound disabilities, multiple heath issues, and his extensive medical needs.

{¶ 5}   An emergency shelter care hearing was held on July 7, 2017. Neither mother nor father appeared, but Appellant was present. The trial court found probable

cause and awarded temporary custody to SCJFS. The trial court appointed a guardian ad litem (GAL) for M.C, as well as counsel for mother, father, and appellant.

{¶ 6} Service for mother and father was not completed for an August 2, 2017 pretrial. Counsel requested evidence and the matter was set for trial on September 13, 2017.

{¶ 7} On the day of trial, SCJFS moved to delete the allegations of neglect contained in the complaint. Mother and Appellant stipulated to a finding of dependency and M.C remained in the temporary custody of SCJFS. A case plan was approved and adopted.

{¶ 8} A review hearing was held on January 2, 2018. The trial court approved and adopted the case plan, found SCJFS had made reasonable efforts to finalize the permanency planning and that compelling reasons existed to preclude a filing of permanent custody, and ordered status quo. The trial court made the same findings and order at a June 1, 2018 review hearing.

{¶ 9} On October 3, 2018, the trial court extended the temporary custody order for an additional six months, and again found reasonable efforts and compelling reasons to preclude a filing of permanent custody. At a November 30, 2018 review hearing, the trial court again made the same findings and ordered status quo.

{¶ 10} On February 15, 2019, the trial court extended the temporary custody of M.C with SCJFS for 6 months.

{¶ 11} Up to this point, Appellant had made no mention of her desire to reunify with M.C. or to work any case plan. On May 17, 2019, appellant filed a motion for legal custody of M.C. A review took place on May 24, 2019 wherein the trial court again found

reasonable efforts and ordered status quo. The trial court further found no compelling reasons existed to preclude a filing of permanent custody. Appellant's motion to change legal custody was set for evidence on August 6, 2019.

{¶ 12} On May 31, 2019, SCJFS filed a motion seeking permanent custody of M.C. The motion alleged M.C. could not be placed with Appellant or his parents within a reasonable amount of time, that M.C. had been in the temporary custody of SCJFS for 12 or more months of a consecutive 22 month period, and that permanent custody was within M.C's best interests. This motion was also set for evidence on August 6, 2019. The trial court later continued the matter to September 25, 2019.

{¶ 13} On September 18, 2019, the GAL for M.C. filed a report recommending M.C. be placed in the permanent custody of SCJFS, and that Appellant's motion for a change of legal custody be denied. In support, the Guardian cited M.C's extensive medical needs, Appellant's combative behavior, confrontational questioning, and berating of staff at M.C's placement, Hattie Larlham, her failure to visit M.C, her home conditions, and Appellant's own physical limitations which would make it difficult if not impossible for Appellant to care for M.C.

{¶ 14} After several more continuances and another review hearing, the trial court heard evidence on Appellant's motion to change legal custody and SCJFS's motion seeking permanent custody on January 21, 2020. M.C's mother was present at the hearing and stipulated to the motion requesting permanent custody of M.C. be granted to SCJFS. She further agreed placement with SCJFS was within M.C.'s best interest. Because Father was incarcerated he was not present at the hearing. He was, however, represented by counsel.

{¶ 15} Ongoing SCJFS caseworker Chelsea Weigand testified regarding the concerns surrounding M.C.'s initial removal from Appellant's home including deplorable home conditions and Appellant's inability to meet M.C.'s extensive medical needs. When SCJFS began its investigation, Appellant refused to let workers into her home and police had to become involved. When SCJFS finally got into Appellant's home, M.C. was found restrained by his arms in a crib-like structure near a sewage-filled bathtub. Appellant claimed she restrained M.C. pursuant to a physician's recommendation, but failed to produce any documentation to confirm that claim. Wiegand explained M.C. was born premature, is non-verbal and non-ambulatory, has cerebral palsy, hydrocephalus (water on the brain), asthma, abnormal lung tissue development, obstructive sleep apnea, narrowing of the subglottic airway, excessive drooling, incontinence, epilepsy, seizures, gastro esophageal reflux, is blind, and must take all nutrition through a stomach tube.

{¶ 16} Weigand testified M.C. has been in the continuous temporary custody of SCJFS since September 13, 2017. When M.C. was removed from Appellant's home, Appellant refused to provide SCJFS with M.C.'s medical equipment or medications. M.C. spent a short period of time at Akron Children's Hospital before being transferred to Hattie Larlham where he remains. While at Akron Children's Hospital, Dr. McPherson discovered bruising on M.C.'s body which was determined to be abusive in nature.

{¶ 17} Weigand also had concerns regarding Appellant's mental health. Appellant was directed to complete a parenting assessment at the beginning of this matter at Northeast Ohio Behavioral Health, which she did complete. However, Appellant advised the evaluator she did not wish to reunify with M.C., and instead wanted M.C. returned to his mother's custody. On January 2, 2018, after Appellant continued to express this wish,

Weigand removed Appellant from the case plan and no further inquiry was made into Appellant's mental health.

{¶ 18} After SCJFS filed its motion for permanent custody, however, Appellant expected to again become part of the case plan. Due to the timing of Appellant's request, she was not returned to the case plan as the goal was no longer reunification with Appellant. It was recommended that she engage in mental health counseling, but this was never made part of the case plan as the agency no longer had an obligation to pay for those services.

{¶ 19} Weigand stated Appellant had moved to an apartment in Cuyahoga Falls, but still owned the Canton home which Appellant stated she would move back to once she retired. Appellant refused on numerous occasions to permit Weigand and the GAL access to her apartment for evaluation. When she finally permitted the GAL into the apartment, the GAL found the home clean, but not handicap accessible inside or out. Further, the GAL found the room that would be M.C.'s was not large enough to accommodate a hospital bed and M.C.'s lounge-type wheelchair, nor were the doorways wide enough for the chair to pass through. Because Appellant had only been in the Cuyahoga Falls apartment a short time, Weigand harbored concerns about her ability to keep the apartment in habitable condition. Appellant has denied the GAL access to the Canton home since M.C. was removed from the home.

{¶ 20} Jessica Galbraith testified she oversees the unit where M.C. lives at Hattie Larlham. M.C. has lived there since August of 2017. The facility allows visitation 24 hours a day, 7 days a week. She explained the doors are always locked for security purposes and further explained there is a sign-in procedure when one visits Hattie Larlham. A visitor

is first asked by someone at the security desk to sign in outside a locked door before being admitted to the facility.

{¶ 21} Weigand explained that Appellant's visits at Hattie Larlham did not need to be supervised, and she could visit at any time, day or night. In 2017, Appellant visited M.C more frequently, sometimes coming with mother and M.C.'s siblings. Her last documented visit before the agency filed its motion for permanent custody, however, was March 25, 2018. In April 2019, after Appellant was advised SCJFS would be filing for permanent custody, Appellant began visiting M.C. once or twice a month.

{¶ 22} Weigand testified M.C. is doing well at Hattie Larlham, where his every need is met. She stated neither mother nor father showed any interest in M.C. She had also been unsuccessful in locating any other appropriate familial placement. Weigand did not believe severing familial ties would impact M.C. as he does not recognize or remember people unless he is exposed to them regularly. She therefore felt granting permanent custody to the SCJFS would be in M.C's best interests.

{¶ 23} Appellant also testified at the hearing. She disagreed with the removal of M.C from her home. She believed the bruising present on M.C's body when he was removed from her home was caused by his wheelchair and denied M.C. was restrained in her home. She blamed the sewage in the bathtub on an aide who used a plunger in the tub which caused "black oily stuff" from the "old lead pipes" to back up into the tub. Appellant wanted M.C. returned to her custody and believed his best interests were served by being home with his family.

{¶ 24} Appellant stated she is a home healthcare aide with 17 years of experience and is capable of caring for M.C. She questioned the care M.C. was receiving at Hattie

Larlham, citing bruising to M.C.'s body, staff allegedly giving toys she would bring M.C. away to other residents, and alleged failure of staff to address warts on M.C.'s hand. She additionally disagreed with the philosophy espoused by Hattie Larlham of allowing M.C. to have maximum freedom of movement when he is not in his wheelchair, to aid in muscle tone and digestion and to prevent bedsores. In M.C.'s case this translates to allowing M.C. to roll off of his floor-level bed and roll or scoot about the room.

{¶ 25} Appellant admitted to not visiting for 4 months. She stated Hattie Larlham was an hour and a half away when she lived in Canton, but yet just 20 minutes away from Cuyahoga Falls. Appellant also stated initially she was told she could not visit M.C. She additionally claimed she visited many times without signing in. Appellant testified that although she had always been M.C.'s caretaker, her understanding of the matter was for her daughter to regain custody of M.C.

{¶ 26} M.C.'s GAL testified she believed the motion for permanent custody was in M.C.'s best interest while the motion to change legal custody to Appellant was not. The Guardian explained Appellant had been uncooperative with her investigation, her home was not wheelchair accessible, and she had great concerns for Appellant's ability to care for M.C., including Appellant's own physical health challenges. The GAL had no concerns, however, for M.C.'s placement at Hattie Larlham.

{¶ 27} At the conclusion of testimony, the trial court took the matter under advisement. The court issued its findings of fact and conclusions of law on February 3, 2020 and denied Appellant's motion to change legal custody. Specifically, the trial court found M.C. could not be placed with his parents or Appellant in a reasonable amount of time, had been in the temporary custody of SCJFS for 12 or more months in a consecutive

22-month period, and had been abandoned by Appellant. The trial court therefore found Appellant's motion for legal custody was not in M.C.'s best interest, and that permanent custody to SCJFS was in M.C.'s best interest.

{¶ 28} Appellant filed an appeal and the matter is now before this court for consideration. She raises two assignments of error as follow:

I

{¶ 29} "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND THEREFORE SUCH DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 30} "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE BEST INTERESTS OF THE CHILD WOULD BE SERVED BY SUCH FINDING AND THEREFORE SUCH DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 31} We address Appellant's assignments of error together. In her first assignment of error, Appellant argues the trial court erred in awarding permanent custody

to SCJFS because SCJFS failed to demonstrate by clear and convincing evidence that grounds existed for a grant of permanent custody, rendering the trial court's decision against the manifest weight of the evidence. In her second assignment of error, Appellant argues the trial court's finding that an award of permanent custody to SCJFS is in M.C's best interest is against the manifest weight of the evidence. We disagree.

{¶ 32} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman*, 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21

**Permanent Custody**

{¶ 33} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned* * *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 34} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C.

2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 35} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

**Appellant is not M.C.'s Parent**

{¶ 36} We note R.C. 2151.414 applies to parents and the prospect of permanently divesting parents of their parental rights. Appellant is not M.C.'s parent, but rather his maternal grandmother and was his legal custodian. Appellant does not acknowledge this issue. The gravamen of the first assignment of error, therefore, is whether a grandparent legal custodian is granted the same rights as a parent under R.C. 2151.419(A).

{¶ 37} The wording of the section concerns the removal of a child from the "child's home." Once legal custody is granted, the child's home is the home of the legal custodian. However, our brethren from the Sixth District in *In the matter of: Kenny B., Jr.*, Lucas App. No. L-05-1227, 2006-Ohio-968, held the following at ¶ 17 and 18:

> While there has been some modern trend to liberally define family and to bestow certain rights to extended family, see, e.g., *Harold v.*

*Collier,* 107 Ohio St.3d 44, 836 N.E.2d 1165, 2005-Ohio-5334 (grandparent visitation), we have found no authority, including those cited by appellant, which grants to an unrelated individual the unique status occupied by biological parents or their legal equivalent, adoptive parents. It is only these upon whom constitutional protection is invested and, in Ohio, the strictures of R.C. 2151.414 adhere. Consequently, we reject appellant's assertion that he is entitled to the same legal status as Kenny B., Jr.'s natural parents.

Appellant's position is simply that of a prior legal custodian. The touchstone of a dispositional order, including legal custody after a finding of neglect and dependency, is that the order be in the child's best interest. *In re Nice* (2001), 141 Ohio App.3d 445, 455, 751 N.E.2d 552. Decisions concerning an award or change of legal custody will not be disturbed absent an abuse of discretion. *In re Alexander C.,* 6th Dist.App. No. L-05-1173, 2005-Ohio-6134, at ¶ 6, 164 Ohio App.3d 540, 843 N.E.2d 211. An abuse of discretion is more than error of law or judgment; the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 38} Although Appellant is related to M.C., she cites no authority granting her the same legal status as M.C.'s parents. At the permanent custody hearing, mother stipulated to SCJFS's motion for permanent custody. Moreover, even if that had not been true, M.C.

had been in the custody of SCJFS for twelve or more months of a consecutive twenty-two-month period, and Appellant does not dispute this fact. This court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence.

### Best Interests

{¶ 39} Appellant further argues SCJFS failed to show by clear and convincing evidence that M.C.'s best interests would be served by granting the agency permanent custody. But the burden was on *Appellant* to demonstrate by a preponderance of the evidence that granting her motion for legal custody was in M.C's best interest. R.C. 2151.414(D) governs "best interests" and states the following:

> (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 40} In a factually similar matter, *In re A.S.* 6th Dist. Lucas No. 2009-Ohio-5504, L-09-1080, the court noted at paragraph 12:

Relatives seeking custody of a child are not afforded the same presumptive rights that a natural parent receives. *In re A.C.*, 12th Dist. No. CA2006-12-105, 2007-Ohio-3350, ¶ 17. Although "a 'children services agency should strive to place a child with a willing and suitable relative[,]' there is no requirement or duty *on the agency* to do so under a best interest analysis." (Emphasis added.) *In re*

*Jones–Dentigance*, 11th Dist. No.2005-P-058, 2005-Ohio-5960, ¶ 26. Rather, a juvenile court is vested "with discretion to determine what placement option is in the child's best interest. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re McCain*, 4th Dist. No. 06CA654, 2007-Ohio-1429, ¶ 20. Consequently, a juvenile court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.*, ¶ 17.

{¶ 41} Thus the burden was on Appellant to present evidence to support her motion for legal custody showing M.C.'s best interests would be served by the trial court granting the same. Based on the record before us, Appellant failed to do so.

{¶ 42} As to best interests, Appellant expressed concerns with M.C's care at Hattie Larlham and presented photos of remnants of bruising on M.C.'s face, warts on his hand, and an incident where she found him with the "straps" on his toy bag wrapped around his arm. She cited another incident where she found M.C. behind the door of his room, and had concerns that staff were giving away toys she bought for M.C. T. 81-87.

{¶ 43} The GAL and Weigand, however, believed permanent custody to SCJFS was in M.C.'s best interest. As discussed above, M.C. suffers from multiple handicaps and diseases, is wheelchair-bound, and requires around the clock care. Transcript of trial (T.) 65. He has been placed at Hattie Larlham since August 2017 and has done very well in this placement. T. 66. Hattie Larlham provides for M.C.'s every medical and educational

need. Although Appellant expressed concerns about the care M.C. received at Hattie Larlham, neither Weigand nor the GAL had observed any reason for concern. T. 72-74, 90. The GAL did, however, have concerns with Appellant's ability to care for M.C. as Appellant had her own health issues, and had failed in large part to cooperate with the GAL's investigation. T. 89. The GAL further did not believe Appellant would make appropriate arrangements for M.C.'s daily care if she were granted legal custody. Moreover, Appellant's current home was not handicap accessible and her Canton home had been deemed inappropriate. T. 88-89. Both Weigand and the GAL believed a grant of permanent custody to the SCJFS was in M.C.'s best interests, and again, M.C. had been in the temporary custody of the SCJFS for twelve or more months of a consecutive twenty-two month period.

{¶ 44} The evidence presented at the hearing demonstrated M.C.'s placement at Hattie Larlham best fosters his growth, stability, and security, and permanent custody to SCJFS is therefore in his best interest.

{¶ 45} Based upon the forgoing, we overrule Appellant's first and second assignments of error.

{¶ 46} The judgment of the Stark County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, John, J. concur.


EEW/rw