OPINION
{¶ 1} Appellants, Claude and Donna Sessoms, appeal a decision of the Butler County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of their six children to Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
 {¶ 2} Appellants are the natural parents of Demond Robinson, and Dallis (aka Mario Robinson), Dakota, Chyenne, Calai and Dakili Sessoms. The children range in age from a year old to the oldest, Demond, who is now 18 years old. BCCSB first became involved with the family in March 2000, when Dallis reported to his school principal that his father had used duct tape to cover his mouth, bound him to a pole, and then whipped him with an electrical cord. Dallis suffered abrasions on his legs from the whipping. Police were called to investigate, and Claude admitted to the occurrence. Donna was home during this incident and did not act to protect Dallis. Claude was charged with domestic violence, pled guilty, and served a jail term.
 {¶ 3} As a result of this incident, BCCSB was granted temporary custody of Demond, Dallis and Dakota on March 3, 2000. The youngest children, Chyenne, Calai, and Dakili were removed from the home for several days, then returned to the parents after a shelter care hearing. On May 19, 2000, all six of the children were adjudicated dependent, Dallis was adjudicated an abused child, and BCCSB was awarded temporary custody of the children. The three youngest children initially remained with Donna while Claude served his jail sentence. However, they too were later placed in the temporary custody of BCCSB. In September 2000 police removed them after Donna left the two youngest children unattended in her automobile while she was shopping. Donna was convicted of child endangering as a result of this incident. The children were placed in foster care where they have remained since, except for Demond, who was placed with an out of state relative. Dakota was moved to a therapeutic foster home after he began acting out sexually with his foster siblings.
 {¶ 4} The Sessoms' home was one permeated with violence. Claude has been diagnosed with intermittent explosive disorder and has an ongoing anger management problem. Alcohol abuse was a contributing factor, although Claude denied any alcohol use during the course of this proceeding. Donna was unwilling or ineffective at protecting the children from violence in the home. She herself permitted the children to hit each other as a form of discipline and dispute resolution. Dallis in particular, was the subject of familial violence. Claude was inclined to be particularly abusive to Dallis, as demonstrated by the whipping episode for which he was convicted. This behavior was emulated by Dallis' brothers, who felt compelled to continually ridicule and belittle Dallis.
 {¶ 5} At least four of the children witnessed acts of domestic violence between their parents. Domestic violence allegations had been investigated while the parents lived in Michigan, Virginia and Washington. Even while this matter was proceeding, Donna displayed suspicious injuries for which the parents offered differing explanations. In one incident, Claude indicated that Donna had been injured in an auto accident while Donna later explained to a BCCSB caseworker that she had been injured when she was throwing a football with Claude. Dallis expressed concerns about his own safety should he be returned to the household.
 {¶ 6} While Claude readily admitted that his whipping of Dallis was inappropriate and excessive, he continued to maintain that no other abuse had ever occurred. He consistently maintained that his parenting style was biblically oriented and justified. Donna likewise maintained that there were no domestic violence issues between her and Claude, or involving any of the other children. During the course of the proceeding Claude's temper was apparent during episodes in which he berated BCCSB workers. While Claude would often refuse to speak with BCCSB case workers, he did on several occasions discuss the custody proceeding with the children, in spite of court and BCCSB admonishments not to involve the children with adult issues.
 {¶ 7} A case plan which included visitation was prepared for the parents. Both underwent psychological exams and participated in some counseling. Claude sought counseling for anger management and the couple participated in several marriage counseling sessions. Claude completed a life skills program that included additional anger management counseling. However, he refused to sign a release which would have allowed BCCSB to review his progress and make further recommendations. When a release was later obtained, it was revealed that Claude minimized his role as an abuser, and stated that he had gone to jail for "spanking his son." Claude failed to complete an outpatient treatment program for alcohol abuse. He has an extensive criminal record which includes multiple charges on alcohol-related offenses and charges involving physical violence, including domestic violence and assault.
 {¶ 8} Donna's psychological assessment was found to be "remarkably invalid" as a result of her responses. It was recommended that she retake that assessment, but her second attempt was similarly invalid. She also failed to participate in a non-offending parenting group to which she was referred. Donna continued to minimize the whipping incident. Dallis reported that his mother told him he was bad for reporting the incident and that it was his fault the children were in foster care. Donna had difficulty parenting the children by herself, and during one visitation, refused to share with Dallis the candy she had brought for the children, and in spite of Dallis' pleas, refused to speak to him. Counseling sessions with both Dallis and his mother proved unfruitful. Dallis eventually asked not to have visitation with his parents. In spite of their participation in counseling and therapy, the parents continued to deny the existence of any domestic violence issues, prompting concern that neither would be able to adequately protect and care for the children.
 {¶ 9} In February 2001, BCCSB filed a motion requesting permanent custody of all six children. After a lengthy trial on the matter, a magistrate granted the motion. On October 24, 2002, the trial court overruled appellants' objections to the magistrate's decision, and adopted the magistrate's decision as its final findings and order. On appeal, appellants raise two assignments of error.
 Assignment of Error No. 1: {¶ 10} "The trial court erred in repeatedly failing to ensure that the appellants' substantive and procedural due process rights were protected."
 {¶ 11} Appellants' first assignment of error raises six separate issues. The first, third and sixth issues relate to alleged errors which occurred during, or prior to, the adjudicatory hearing. Upon the conclusion of this hearing, the trial court adjudicated Dallis an abused child, and adjudicated all six of the children dependent. The decision placed the children in the temporary custody of BCCSB.
 {¶ 12} A dependency adjudication followed by an award of temporary custody to a children's services agency is a final appealable order. Inre Murray (1990), 52 Ohio St.3d 155, 159. Appellants failed to appeal from the dependency adjudication which resulted in a grant of temporary custody. Thus they cannot now, on appeal of a subsequent grant of permanent custody, raise alleged errors which occurred at the earlier adjudication hearing. Id.
 {¶ 13} While appellants cite authority indicating that alleged error arising in a dependency hearing may be raised on appeal of a subsequent grant of permanent custody, see In re Fennell, Athens App. No. 01CA45, 2002-Ohio-521, this authority is inapplicable to the present matter. Fennell involved the peculiar circumstance where the parent was not served with the decision adjudicating her children dependent. TheFennell court thus concluded that the parent could raise issues pertaining to the adjudication on appeal of the later permanent custody motion. In the present matter, the record demonstrates that appellants were served with the decision adjudicating the children dependent and awarding temporary custody to BCCSB.
 {¶ 14} Appellants further argue that the adjudication decision does not contain "final appealable" language. However, this assertion is not true, as the decision contains language stating that there is "no just cause for delay," and that the decision is a "final appealable" order. We therefore find that appellants have failed to timely appeal from the adjudication decision, and we will not review any issues related to that decision.
 {¶ 15} In their second issue for review, appellants allege that there was a conflict of interest in the dual appointment of the children's guardian ad litem as the children's attorney. Appellants' fifth and seventh issues allege that BCCBS failed to comply with the Ohio Administrative Code requirement that the agency meet with parents to review its decision to file a permanent custody motion. See Ohio Adm. Code 5101:2-42-96(D).
 {¶ 16} Juv.R. 40(E)(3)(b) provides, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." The waiver under Juv.R. 40(E)(3)(b) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." In re Etter (1998), 134 Ohio App.3d 484, 492, citing Goldfussv. Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401. Appellants failed to raise these issues when objecting to the magistrate's decision. Their failure to preserve these issues by properly objecting constitutes a waiver of their right to raise them on appeal. Id.; Juv.R. 40(E)(3)(b).
 {¶ 17} Appellants' fourth issue for review alleges that the trial court erred when calculating the number of months that three of the children (Chyenne, Dakili and Calai) had been in temporary custody. These children were adjudicated dependent in May 2000, initially placed with the parents, and ultimately removed from appellant's home in September 2000.
 {¶ 18} R.C. 2151.414(B)(1) states that the trial court may grant permanent custody of a child to a children's services agency, if it is in the child's best interest and if the child has been in the temporary custody of the agency for twelve or more months of a 22-month period. R.C. 2151.414(B)(1)(d). This code section mandates that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated or the date that is sixty days after the removal of the child from the home." In the present case, the date of the adjudication, May 2000, is earlier than the date falling 60 days after the children were removed from the home. Thus, the statutory calculation begins in May 2000. By the time of the permanent custody hearing on October 23, 2001, these children had been in the temporary custody of BCCSB for approximately seventeen months of the prior 22 months, as aptly calculated by the trial court. We thus find this contention to be without merit.
 {¶ 19} For the foregoing reasons, appellants' first assignment of error is overruled.
 Assignment of Error No. 2: {¶ 20} "The judgment of the trial court is against the manifest weight of the evidence in that BCCSB failed to meet its burden of proving with clear and convincing evidence that termination of appellant's parental rights was in the best interest of their children or that the children could not be reunified with either of appellants within a reasonable time."
 {¶ 21} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. Therefore, in order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} A reviewing court will not reverse a trial court's finding that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented. Cross v. Ledford at 479. Before granting permanent custody of a child to the state, the trial court is required to make specific statutory findings. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 23} A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, or that the child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. Id.
 {¶ 24} As relevant to the present case, the trial court found pursuant to R.C. 2151.414(B)(1)(d), that the children had been in the custody of the WCCSB for 12 or more months of the 22-month period ending May 18, 1999. As explained in the resolution of appellants' first assignment of error, the trial court correctly calculated the time that the children had been in the custody of BCCSB. The trial court also determined that the children could not be placed with either parent within a reasonable time due to the parents' failure to acknowledge or address readily apparent domestic violence issues. Both of these conclusions are supported by the record.
 {¶ 25} The trial court further found that it was in the children's best interest that BCCSB be granted permanent custody. In making the best interest determination, the trial court was required to consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 26} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999:
 {¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 31} Upon examination of the record, we find that the trial court's determination that it is in the children's best interest to be permanently placed in the custody of BCCSB is supported by the record. The trial court made findings related to each of the statutory best interest factors, which are supported by the evidence.
 {¶ 32} As to the first factor, the trial court found that the children are doing well in their respective foster homes, and that one foster family wishes to adopt four of the children. The court found that Donna is easily overwhelmed when charged with the care of all the children, and that Claude is primarily responsible for maintaining order. Claude frequently used bible readings with the children to transparently portray the BCCSB as liars allied with Satan while positioning himself as the "possessor of truth." The trial court noted evidence that the parents possess some qualities of value to the children: they value education, possess a strong work ethic, and love their children. However, the trial court noted the major concern centered around the children's assertions of domestic violence. The trial court noted that, in spite of the parents' efforts to comply with case plan requirements, they failed to remedy the concern which led to the children's removal, namely, addressing the domestic violence issues. This concern was confirmed by the testimony of therapists and counselors involved with the family.
 {¶ 33} As to the second factor, the trial court stated that it had considered Dallis' wishes, as expressed by him. The trial court did not interview any of the other children. The guardian ad litem recommended that the permanent custody motion be granted. With regard to the third factor, the court correctly determined that the children had been in the temporary custody of BCCSB for more than 12 months of the preceding 22-month period. Finally, the trial court found that the children are in need of a legally secure placement, and that the parents had not provided such a placement. The fifth factor was inapplicable to the present case.
 {¶ 34} Review of the record bears out each of the trial court's assertions. Coupled with the evidence recited earlier in this decision, we find no abuse of discretion in the trial court's decision that it is in the children's best interest that BCCSB be granted permanent custody. The assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.