OPINION
{¶ 1} Appellants, Charles G., Jr. and Kasaundra W., separately appeal the decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of their son, C.G., to appellee, the Preble County Job and Family Services, Children Services Division (the "Agency"). Appellants, Charles G., Sr. and Geneva G., the paternal *Page 2 
grandparents of the child, appeal the decision of the juvenile court denying their motion to intervene.
 {¶ 2} C.G. was born in August 2004; his parents, Charles and Kasaundra, were never married. On March 22, 2005, Kasaundra, then 18 years old, was arrested for a probation violation for testing positive for cocaine. C.G., then six months old, was with her when she was arrested. As a result of a lack of information regarding any appropriate relative that could take care of C.G., the child was placed in the Agency's temporary custody that same day.
 {¶ 3} On March 23, the Agency filed a complaint alleging that C.G. was dependent and seeking temporary custody of him. The Agency was granted temporary custody of C.G. on March 29. A case plan was subsequently developed for reunification. The juvenile court required Charles to provide at least one clean drug screen before he could be allowed visitation with his son. He never did.
 {¶ 4} On June 22, 2005, during an adjudicatory hearing, Charles and Kasaundra both entered a plea of admit to the allegation that C.G. was dependent. By entry filed that day, the juvenile court adjudicated the child dependent and ordered that temporary custody remain with the Agency. On June 15, 2006, the Agency moved for permanent custody of C.G. under R.C. 2151.413(A).
 {¶ 5} C.G.'s paternal grandparents subsequently moved to intervene in the permanent custody proceedings. According to their motion, they had been visiting with C.G. every week since September 2005. The grandparents also filed a motion for legal custody of C.G. The juvenile court ruled that the grandparents' motions would be held in abeyance pending the court's determination of the Agency's motion for permanent custody, and would be heard at a separate bifurcated dispositional hearing if required. A hearing was held on the Agency's motion for permanent custody in October and December 2006. On February 7, *Page 3 
2007, the juvenile court denied the grandparents' motions to intervene and for legal custody.
 {¶ 6} On February 20, the juvenile court granted permanent custody of C.G. to the Agency and terminated the parental rights of Charles and Kasaundra. The court found that C.G. had "been in the temporary custody of [the Agency] for 12 of the last 22 months, specifically 14½ at the time of the filing [of the permanent custody motion]," and that "[w]hile the law does not require a finding regarding whether the child could or should be placed with either parent within a reasonable period of time, * * * [C.G.] cannot and should not be placed with either Kasaundra [W.] and certainly not Charles [G.] within a reasonable period of time." The juvenile court further found "as a matter of fact that it is in the best interest of [C.G.] to have his permanent custody placed with [the Agency]."
 {¶ 7} On appeal, Kasaundra raises two assignments of error. Charles and the paternal grandparents each raise one assignment of error.
 {¶ 8} Kasaundra's Assignment of Error No. 1:
 {¶ 9} "THE APPELLANT'S ADMISSION WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND RULE 29 OF THE OHIO RULES OF JUVENILE PROCEDURE, WHERE THE TRIAL COURT FAILED TO ADEQUATELY EXPLAIN THE NATURE OF THE ALLEGATIONS, THE RIGHTS WAIVED BY ENTERING AN ADMISSION, AND THE CONSEQUENCES OF HER ADMISSION."
 {¶ 10} Kasaundra argues that the juvenile court failed to comply with Juv.R. 29(D) before accepting her plea of admit at the adjudicatory hearing, and that as a result, C.G.'s dependency adjudication must be reversed. We agree that the juvenile court failed to comply with Juv.R. 29(D). However, this court lacks jurisdiction over the juvenile court's finding of dependency, and therefore cannot sustain Kasaundra's first assignment of error. *Page 4 
 {¶ 11} It is well-established that a dependency adjudication followed by a disposition awarding or continuing temporary custody of a child to a public children services agency constitutes a final appealable order. See In re Murray (1990), 52 Ohio St.3d 155; In re Sessoms, Butler App. No. CA2002-11-280, 2003-Ohio-5281. Thus, the juvenile court's June 22, 2005 entry adjudicating C.G. dependent and ordering that temporary custody remain with the Agency, was a final appealable order.
 {¶ 12} App.R. 4 provides that a notice of appeal in a civil case must be filed "within 30 days of the date of the entry of the judgment or order appealed from." Kasaundra never appealed the dependency adjudication which continued temporary custody of the child with the Agency. She cannot now, on appeal of a subsequent grant of permanent custody, raise errors which occurred at the earlier adjudication hearing. See Sessoms; In re Caputo (Apr. 13, 1998), Butler App. No. CA97-02-032. Because Kasaundra never appealed the juvenile court's June 22, 2005 entry, this court is without jurisdiction to consider Kasaundra's first assignment of error, and it is overruled. In reKeltner (Aug. 10, 1998), Butler App. No. CA97-10-188, at 14.
 {¶ 13} That being said, we wish to briefly address the juvenile court's procedure with respect to Juv.R. 29(D). Id. Juv.R. 29 outlines the procedure a trial court must follow upon the entry of an admission to the allegations of a complaint at an adjudicatory hearing. Specifically, Juv.R. 29(D) provides that "[t]he court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing." *Page 5 
 {¶ 14} Under Juv.R. 29(D), the court must perform an on-the-record exchange with the party to determine whether his or her admission is knowing, intelligent and voluntary. See In re M. T., Madison App. No. CA2006-04-018, 2007-Ohio-2446. And while the "`trial court need not strictly adhere to the procedures imposed by these rules,' it must substantially comply with their provisions." Id.
 {¶ 15} The transcript of the adjudicatory hearing shows that the juvenile court failed to engage in any kind of colloquy with Kasaundra to ascertain whether her admission was voluntarily made or whether she had a complete understanding of the proceeding and the consequences of entering such admission. Instead, the record shows that upon being told that Kasaundra wanted to enter a plea of admit, the juvenile court merely inquired whether that was her plea. Kasaundra replied that it was.
 {¶ 16} Merely asking a parent whether such was his or her plea does not comply at all with Juv.R. 29(D), let alone substantially. In the future, we strongly urge the juvenile court to take the time to elicit the information required under Juv.R. 29(D) from stipulating parties before accepting their admissions. In re Keltner, Butler App. No. CA97-10-188, at 15.
 {¶ 17} Kasaundra's Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT'S DECISION TO GRANT PREBLE COUNTY JOB AND FAMILY SERVICES PERMANENT CUSTODY OF THE MINOR CHILDREN [SIC] IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 19} Charles' Assignment of Error No. 1:
 {¶ 20} "THE TRIAL COURT ERRED IN GRANTING CHILDREN'S SERVICES [sic] MOTION FOR PERMANENT CUSTODY."
 {¶ 21} In the foregoing two assignments of error, Kasaundra and Charles both argue that the juvenile court erred by granting permanent custody of C.G. to the Agency. *Page 6 
Specifically, Kasaundra and Charles argue that the juvenile court failed to make its finding that permanent custody was in C.G.'s best interest, under the clear and convincing standard in violation of R.C.2151.414(B). The Agency counters that the juvenile court was not required to use the phrase "by clear and convincing evidence" and citesIn re Bacorn (Dec. 20, 1996), Portage App. No. 96-P-0015 and State v.Miller, Preble App. No. CA2006-05-011, 2007-Ohio-784, in support.
 {¶ 22} "R.C. 2151.414 sets forth the procedures a juvenile courtmust follow and the findings it must make before granting a motion [for permanent custody] filed pursuant to R.C. 2151.413." In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 9 (emphasis added). According to R.C.2151.414(B), before a juvenile court can grant permanent custody to a children services agency, the court "must `determin[e] * * *, by clear andconvincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that any of the [factors set forth in R.C. 2151.414(B)(1)(a) through (d)] apply.'" Id. (emphasis added); see, also, In re A.W., Clinton App. No. CA2006-10-036,2007-Ohio-722 (under R.C. 2151.414[B][1], a juvenile court may grant permanent custody of a child to a public children services agencyonly if the court finds, by clear and convincing evidence, that granting permanent custody to the agency is in the best interest of the child).
 {¶ 23} As the Ohio Supreme Court noted, "[p]arents have a basic civil right to raise their children. [P]ermanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' Consequently, parents `must be afforded every procedural and substantial protection the law allows.'" In reC.W. at ¶ 23 (citations omitted). "Trial courts have the mandatory duty to fully comply with the permanent custody statutes and may not award permanent custody without making the requisite findings." In reMcCain, Vinton App. No. 06CA654, 2007-Ohio-1429, ¶ 25. *Page 7 
 {¶ 24} We therefore hold that before a juvenile court can grant permanent custody of a child to a children services agency, the courtmust determine, by clear and convincing evidence, that permanent custody is in the child's best interest, and must so state in its decision and/or entry terminating parental rights and granting permanent custody to an agency.
 {¶ 25} In the case at bar, the juvenile court found that it was in the best interest of C.G. to grant permanent custody to the Agency. However, the juvenile did not make that determination by clear and convincing evidence. Rather, the juvenile court found "as a matter of fact that it is in the best interest of [C.G.] to have his permanent custody placed with [the Agency]." (Emphasis added.)
 {¶ 26} We decline to apply the cases cited by the Agency. The Agency is correct that in Miller, Preble App. No. CA2006-05-011, we held that "[although the trial court did not state that his findings were to a `clear and convincing standard,' we presume that the judge followed the law." Id. at ¶ 17. However, we find that the decision does not apply to the case at bar as it involved a criminal case and the adjudication of an offender as a sexual predator.
 {¶ 27} Likewise, we find that In re Bacorn does not apply to the case at bar. In that case, the child's parents challenged the trial court's grant of permanent custody to the agency on the ground that because the trial court found that the child's placement was in his best interest, the court failed to find that permanent custody was in the child's best interest by clear and convincing evidence. The Eleventh Appellate District upheld the trial court's decision. First, looking at the overall context of the entry, the court of appeals found it could presume that the trial court was referring to permanent custody as the type of placement at issue. Then, with regard to the trial court's failure to use the phrase "clear and convincing evidence," the court of appeals stated: *Page 8 
 {¶ 28} "Although it would have been preferable had the court written a single sentence stating that it found placement to be [in the child's] best interest by clear and convincing evidence, its failure to do so in this case was not reversible error. In each paragraph leading up to that statement, the court specifically found clear and convincing evidence of the factors which must be considered prior to awarding permanent custody. The juvenile court's finding that the factors indicating that permanent custody was in [the child's] best interest were supported by clear and convincing evidence implicitly leads to the conclusion that there was clear and convincing evidence that permanent custody was in his best interests." In re Bacorn, Portage App. No. 96-P-0015,1996 WL 762005, at *3.
 {¶ 29} In the case at bar, the juvenile court never found by clear and convincing evidence that permanent custody was in C.G.'s best interest, never stated that its findings under the best interest factors in R.C.2151.414(D) were to a clear and convincing standard, and instead merely found that permanent custody of C.G. to the Agency was in his best interest "as a matter of fact." In re Bacorn, therefore, does not apply.
 {¶ 30} We therefore find that the juvenile court violated the clear mandatory provisions of R.C. 2151.414(B)(1) when it failed to expressly make its best interest determination under the clear and convincing standard, and that such violation constitutes a reversible error. It follows that the juvenile court erred by granting permanent custody of the child to the Agency. Kasaundra's second assignment of error is sustained. Likewise, Charles' first argument under his assignment of error is sustained.
 {¶ 31} Under his assignment of error, Charles also argues that the juvenile court (1) improperly found that C.G. had been in the Agency's temporary custody for 14½ months at the time the permanent custody motion was filed; (2) failed to state its finding that C.G. could not be placed with either parent, to a clear and convincing standard in violation of R.C. 2151.414(B); (3) improperly granted permanent custody to the Agency under the wrong *Page 9 
statutory provision; and (4) erred by ruling that a legally secure placement could not be achieved without granting permanent custody to the Agency.
 {¶ 32} The juvenile court found that C.G. had "been in the temporary custody of [the Agency] for 12 of the last 22 months, specifically 14½ at the time of the filing [of the permanent custody motion]." R.C.2151.414(B)(1) provides that a juvenile court may grant permanent custody of a child to an agency if the child has been in the temporary custody of the agency "for twelve or more months of a consecutive twenty-two months[.]" A child is considered to have entered the temporary custody of the agency "on the earlier of the date the child is adjudicated * * * or the date that is sixty days after the removal of the child from home." Id.
 {¶ 33} C.G. was removed from home on March 22, 2005 and adjudicated dependent on June 22, 2005. Thus, under R.C. 2151.414(B)(1), C.G. entered the temporary custody of the Agency on May 21, 2005 (60 days added to the date of March 22). We agree with Charles that when the Agency moved for permanent custody on June 15, 2006, C.G. had not been in the Agency's temporary custody for 14½ months. However, the record clearly shows that C.G. had been in the Agency's temporary custody for almost 13 months, or "for twelve or more months of a consecutive twenty-two month period," as required by statute. Accordingly, the juvenile court's misstatement is harmless error. See In re Borders, Brown App. No. CA2001-10-017, 2002-Ohio-2578.
 {¶ 34} Charles next argues that the juvenile court failed to state its finding that C.G. could not be placed with either parent, to a clear and convincing standard in violation of R.C. 2151.414(B). However, given our resolution under Kasaundra's second assignment of error and Charles' first argument under his assignment of error, and the fact that the juvenile court was not required to find whether C.G. could or should be placed with his parents within a reasonable time, we decline to address Charles' argument. See In re T.T., Butler App. Nos. *Page 10 
CA2004-07-175 and CA2004-08-198, 2005-Ohio-240, ¶ 25-26; and In reJ.I., Preble App. No. CA2005-05-008, 2005-Ohio-4920, ¶ 22.
 {¶ 35} Charles next argues that the juvenile court improperly granted permanent custody to the Agency under the wrong statutory provision. In its February 20, 2007 entry, the juvenile court granted the Agency's permanent custody motion "pursuant to [R.C.] 2151.413." While R.C.2151.414 governs the procedures a juvenile court must follow and the findings it must make before granting a motion for permanent custody, R.C. 2151.413 only governs when a children services agency may or must move for permanent custody. The juvenile court, therefore, cited the wrong statutory provision under R.C. Chapter 2151 when it granted permanent custody of C.G. to the Agency. On remand under Kasaundra's second assignment of error, the juvenile court is instructed to cite the proper statutory provision when ruling on the Agency's permanent custody motion. Likewise, in the future, we urge the juvenile court to cite the proper statutory provision under R.C. Chapter 2151 when ruling on a permanent custody motion.
 {¶ 36} Finally, Charles argues that the juvenile court erred by ruling that a legally secure placement could not be achieved without granting permanent custody to the Agency. Specifically, Charles argues that the juvenile court "was not in a position" to make such a finding under R.C.2151.414(D)(4) because it did not allow C.G.'s paternal grandparents to intervene, and thus to present evidence "they in fact had a `legally secure permanent placement' for the child." The juvenile court found that Charles' "nothingness and his families' failure to motivate him does not mean that he or his family could be considered for a legally secure permanent placement."
 {¶ 37} In determining the best interest of a child, a juvenile court must consider all relevant factors, including the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the *Page 11 
agency[.]" R.C. 2151.414(D)(4). It is well-established that relatives seeking custody of a child are not afforded the same presumptive rights that a natural parent receives. In re A.C, Butler App. No. CA2006-12-105, 2007-Ohio-3350, ¶ 17. Though a "`children services agency should strive to place a child with a willing and suitable relative[,]' there is no requirement or duty on the agency to do so under a best interest analysis." In re Jones-Dentigance, Portage App. No. 2005-P-0058, 2005-Ohio-5960, ¶ 26. "Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." In re McCain, Vinton App. No. 06CA654, ¶ 20. A juvenile court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. In re A.C. at ¶ 17.
 {¶ 38} The paternal grandparents were not allowed to intervene in the permanent custody proceedings and were, therefore, prevented from presenting evidence. However, there is evidence in the record relative to the grandparents in the form of a report filed on August 7, 2006 by the guardian ad litem. The report states in pertinent part:
 {¶ 39} "As a result of my home visit, I cannot recommend [the paternal grandparents] as custodians for [C.G.]. First, and perhaps most importantly, the condition of [their] home is not suitable or appropriate for [C.G.]. The home is infested with bugs and [the grandparents] house two pit bulls in their backyard. Additionally, the backyard holds a deteriorating swimming pool and piles of scrap metal and junk. The home has only two bedrooms, with one bedroom occupied by [the grandparents] and the other bedroom set up for [other relatives], and the home has a dangerous flight of stairs that lead from the front door to the street that passes in front of the home.
 {¶ 40} "In addition to the condition of [the] home, [the grandparents] live in close proximity to [their son] Charles, and Charles has yet to provide a clean drug screen to begin *Page 12 
visitation with [C.G.]. Additionally, Charles has admitted to me that he must register as a sex offender in the state of Indiana, which causes me grave concern about his involvement in [C.G.'s] life.
 {¶ 41} "According to [the grandparents], they live roughly ten minutes from Charles, and they see Charles on a regular weekly basis. [The grandparents] live approximately 27 miles from Eaton and [the grandmother], who works two jobs, is the only one in the home with the ability to drive using a valid driver's license.
 {¶ 42} "Because of the safety concerns I have regarding the [grandparents'] home, their close proximity to Charles, and their inability to properly transport [C.G.] in the event of an emergency while [the grandmother] is at one of her jobs, neither [grandparents] should be considered as a placement of any kind for [C.G.]."
 {¶ 43} In light of the foregoing, we find Charles' fifth argument under his assignment of error to be meritless. The juvenile court did not err when it ruled that the paternal grandparents could not be considered for a legally secure placement. Charles' first assignment of error is sustained in part and reversed in part.
 {¶ 44} We reverse the juvenile court's decision granting permanent custody of C.G. to the Agency and remand this matter to the juvenile court for further proceedings in compliance with the law and consistent with this opinion. On remand, the juvenile court is not required to hold a new evidentiary hearing and is permitted to make the proper findings required under R.C. 2151.414 based on the previous record. See In reArnold, Allen App. No. 1-06-04, 2006-Ohio-2794. Further, we hasten to add that our decision today should not be construed in any manner as a comment on the underlying merits of this case.
 {¶ 45} The paternal grandparents' Assignment of Error No. 1:
 {¶ 46} "THE TRIAL COURT ERRED IN DENYING PATERNAL GRANDPARENTS' MOTION TO BE ADDED AS A THIRD PARTY." *Page 13 
 {¶ 47} The juvenile court denied the paternal grandparents' motion to intervene in the permanent custody proceedings on February 7, 2007. Before we address the grandparents' assignment of error, we must first determine whether the juvenile court's February 7, 2007 entry was a final appealable order.[1]
 {¶ 48} Appellate courts have jurisdiction to review the final appealable orders from lower courts. See Section 3(B)(2), Article IV, Ohio Constitution; In re Murray, 52 Ohio St.3d 155; R.C. 2505.03. Appellate courts lack jurisdiction to review nonfinal appealable orders and must dismiss matters lacking final appealable orders. In reT.M., Madison App. Nos. CA2006-01-001 and CA2006-01-004, 2006-Ohio-6548, ¶ 12.
 {¶ 49} A "final order" is defined in R.C. 2505.02(B), in pertinent part as: "(1) an order that affects a substantial right in an action that in effect determines the action and prevents a judgment; (2) an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]" According to the Ohio Supreme Court, proceedings in juvenile courts are special statutory proceedings. Id. at ¶ 16, citing State ex rel. Fowler v.Smith, 68 Ohio St.3d 357, 1994-Ohio-302. An order affects a substantial right if it would foreclose appropriate relief in the future. In reGoff, Portage App. No. 2001-P-0144, 2003-Ohio-6768, ¶ 10.
 {¶ 50} In In re Goff, paternal grandparents moved to intervene in the dependency proceeding involving their grandson. The juvenile court denied their motion and the grandparents appealed. The Eleventh Appellate District found that the juvenile court's denial of the motion to intervene was a final appealable order: *Page 14 
 {¶ 51} "Put differently, an order affects a substantial right if it completely takes away a party's right to litigate the point to which they are objecting. A finding that the [denial of the motion to intervene] was not a final appealable order would foreclose [the grandparents'] only opportunity to be included in the underlying action involving their grandchild. In sum, the order denying [the grandparents'] motion to intervene involves a `special proceeding' and affects a substantial right. Therefore, the order denying [the grandparents'] motion to intervene is a final appealable order." Id. at ¶ 10.
 {¶ 52} We agree with the Eleventh Appellate District's reasoning and find that the juvenile court's February 7, 2007 entry denying the paternal grandparents' motion to intervene was a final appealable order. As noted earlier, App.R. 4 provides that a notice of appeal in a civil case must be filed "within 30 days of the date of the entry of the judgment or order appealed from." The grandparents filed their notice of appeal on March 15, 2007. Because the grandparents did not timely appeal the juvenile court's denial of their motion to intervene, this court is without jurisdiction to consider their assignment of error, and it is overruled. See In re Keltner, Butler App. No. CA97-10-188.
 {¶ 53} Judgment affirmed in part, reversed in part, and remanded.
YOUNG, P.J., BRESSLER and POWELL, JJ., concur.
[1] The Agency first challenges the paternal grandparents' assignment of error on the ground that because they were never parties below, they have no standing to appeal. We disagree. Though "a person who was not a party to an action generally has no right of appeal, it is well-settled that a person who has attempted to intervene as a party does have standing to appeal." In re J.W., Franklin App. Nos. 06AP-864, 06AP-1062, and 06AP-875, 2007-Ohio-1419, ¶ 24, citing In re Fusik, Athens App. No. 02CA16, 2002-Ohio-4410. *Page 1