DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant-mother, Brittany Davis, appeals from the Juvenile Division of the Ross County Common Pleas Court's decision and judgment entry terminating her parental rights and responsibilities and placing her child, B.D., in the permanent custody of the Ross County Job and Family Services Children's Division. Appellant raises five assignments of error, contending that: (1) her admission of dependency was not knowingly, *Page 2 
intelligently and voluntarily made; (2) she was denied due process by the failure of RCCS to make reasonable reunification efforts; (3) the trial court erred in finding that RCCS made reasonable reunification efforts, to include investigating potentially suitable relative placements; (4) the trial court erred in granting permanent custody in the absence of evidence of record either of the child's wishes concerning placement, or evidence that the child was incapable of expressing a preference; and (5) the judgment was against the manifest weight of the evidence. Because we fail to find merit in any of Appellant's assigned errors, and because we find that the trial court's determination that a grant of permanent custody was in the best interests of the child is supported by competent credible evidence, we affirm the decision of the trial court.
 FACTS {¶ 2} The record reveals the following facts pertinent to this appeal. Brittany Davis gave birth to her son, B.D., on April 28, 2004, when she was just sixteen years old and was living in foster care herself. B.D. lived with her, in foster care, until Brittany entered into a voluntary care agreement with Ross County Job and Family Services ("RCJFS") on December 15, 2005, at which point Brittany left foster care upon turning eighteen years old, leaving B.D. in foster care. While Brittany had the option of remaining *Page 3 
in foster care with her son until she graduated from high school, she chose not to and instead left foster care with a plan to, among other things, obtain suitable housing, which would allow her to have her child with her.
 {¶ 3} On January 5, 2006, a dependency action was filed in the Ross County Court of Common Pleas, Juvenile Division. Appellant was represented by counsel at her arraignment hearing held on January 9, 2006, wherein she entered a plea of admission to the allegations of dependency. Thereafter, the matter came on for disposition on April 25, 2006[2], at which time the child was adjudicated a dependent child and was ordered to remain in the temporary custody of RCJFS, pending a review hearing. At a review hearing held on October 24, 2006, temporary custody was extended.
 {¶ 4} Caseworker Teresa Babb testified that during the time that the child was in the temporary custody of RCJFS, Appellant visited only sporadically from January 2006 until October 2006. Beginning in October of 2006, Appellant's visits with the child stopped for a period exceeding ninety days and did not resume until January 30, 2007, four days after a motion for permanent custody was filed with the court. Babb also testified that Appellant's sister regularly visited with the child for a short period of time; however, when Appellant stopped having contact with the child, *Page 4 
RCJFS informed the sister that a motion for permanent custody was likely to be filed. As a result, Appellant's sister stopped visiting.
 {¶ 5} On January 26, 2007, the State filed a motion for permanent custody. This motion was based on (1) Appellant's failure to visit with the child since August 17, 2006 and failure to have any contact with the agency since October 2006; (2) Appellant's failure to complete any part of her case plan[3]; and (3) Danny Long's failure to have any contact whatsoever with the child. On January 30, 2007, just four days after the motion for permanent custody was filed, a review hearing was held. Appellant attended the hearing and then visited with the child on that day. Soon after, Appellant provided the agency with a new address, where she claimed to have been residing for two months prior to the filing of the motion.
 {¶ 6} The motion for permanent custody came on for hearing over a two day period, on April 30, 2007 and May 18, 2007. The guardian ad litem submitted a report at the April 30, 2007 hearing, but requested permission to hear the presentation of the evidence before making his final recommendation as to placement. After hearing two days of testimony, the *Page 5 
court ordered that the parties submit written briefs in support of their respective positions.
 {¶ 7} Appellant filed her written argument to the court on June 8, 2007, contending that she had made progress towards the case plan and reunification. Specifically, Appellant asserted that she had obtained suitable housing with friends, had a job caring for her friend's children in exchange for payment, room and board, had completed parenting classes, and had an appointment scheduled with a new psychiatrist. Appellant also asserted that she had maintained regular contact with the child since the filing of the motion for permanent custody and claimed that lack of transportation was the reason for her failure to visit with the child from October 2006 to January 2007.
 {¶ 8} The State filed its written argument to the court on June 14, 2007, asserting that it had proven by clear and convincing evidence that a grant of permanent custody was in the best interests of the child and that the child had been in the custody of the agency for more than twelve of the last twenty-two consecutive months. The State argued that Appellant had failed to complete any part of her case plan at the time of the filing of the motion for permanent custody and that even at the time of the hearings, had failed to follow-up with her psychiatrist as required. Specifically, the State argued *Page 6 
that Appellant had had ten different residences since the time the child had been placed in the care of the agency, that Appellant had stopped treating with her psychiatrist, had gone off of her medication, had gone for a period exceeding ninety days without contacting the child and that the child's father had abandoned him. The State further argued that the child could not be and should not be placed with either parent within a reasonable amount of time despite the reasonable efforts of the agency, that the parents had demonstrated a lack of commitment to the child, had abandoned the child, that the child had been in the custody of the agency for over twelve of the last twenty-two consecutive months and that a grant of permanent custody was in the best interest of the child.
 {¶ 9} On July 24, 2007, the magistrate's order was filed, granting the State's motion for permanent custody and terminating all parental rights and responsibilities of Appellant, as well as Danny Long. Appellant subsequently filed a motion for findings of fact and conclusions of law as well as objections to the magistrate's order. Upon the filing of the findings of fact and conclusions of law on October 29, 2007, Appellant re-filed her objections to the magistrate's decision on November 5, 2007; however, the trial court issued its entry adopting the magistrate's decision on November 15, 2007. A notice of appeal was filed on November 29, 2007; however, this *Page 7 
Court determined, by entry dated January 18, 2008, that because the trial court's entry did not separately state the judgment and relief granted to the parties, that it was not a final, appealable order and that the appeal must be dismissed.
 {¶ 10} The trial court issued a corrected entry on January 29, 2008, and a second notice of appeal was filed on February 26, 2008, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR {¶ 11} "I. MOTHER-APPELLANT'S ADMISSION OF DEPENDENCY WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE.
 {¶ 12} II. MOTHER-APPELLANT WAS DENIED DUE PROCESS BY THE FAILURE OF RCCS TO MAKE REASONABLE REUNIFICATION EFFORTS.
 {¶ 13} III. THE TRIAL COURT ERRED IN FINDING THAT RCCS MADE REASONABLE REUNIFICATION EFFORTS, TO INCLUDE INVESTIGATING POTENTIALLY SUITABLE RELATIVE PLACEMENTS.
 {¶ 14} IV. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY IN THE ABSENCE OF EVIDENCE OF RECORD EITHER OF THE CHILD'S WISHES CONCERNING PLACEMENT, OR EVIDENCE THAT THE CHILD WAS INCAPABLE OF EXPRESSING A PREFERENCE.
 {¶ 15} V. THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 8 
 STANDARD OF REVIEW {¶ 16} "The decision to adopt, reject, or modify a magistrate's decision will not be overturned on appeal unless the decision was an abuse of discretion." Knox v. Knox, Gallia App. No. 03CA13,2004-Ohio-428, citing Wade v. Wade (1996), 113 Ohio App.3d 414, 419,680 N.E.2d 1305. An abuse of discretion is more than an error of judgment, but instead connotes a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. When applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 17} At the outset, we note it is well established that a parent's right to raise a child is an essential and basic civil right. In reHayes (1997), 79 Ohio St.3d at 48. However, a parent may lose custody of a child to a non-parent if a court finds the parent unsuitable. In rePerales (1977), 52 Ohio St.2d 89, syllabus, 369 N.E.2d 1047. A finding of unsuitability may be premised upon a determination that the parent abandoned the child. Id.
 {¶ 18} RC. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to *Page 9 
RC. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 19} We note that clear and convincing evidence must exist to support a permanent custody award. The Supreme Court of Ohio has defined "clear and convincing evidence" as follows: "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; See, also,State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, *Page 10 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 20} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 ANALYSIS OF ASSIGNMENTS OF ERROR {¶ 21} Appellant, in her first assignment of error, contends that her admission of dependency was not knowingly, intelligently and voluntarily made. Specifically, Appellant argues that the juvenile court failed to comply with Juv. R. 29 (D) before accepting her plea of admission. We agree that the juvenile court failed to comply with Juv. R. 29 (D). However, as *Page 11 
Appellee correctly argues, this court lacks jurisdiction over the juvenile court's finding of dependency and therefore cannot sustain Appellant's first assignment of error.
The Supreme Court of Ohio has held that:
 "An adjudication by a juvenile court that a child is `neglected' or `dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02." In re Murray (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, syllabus.
As set forth above, Appellant admitted that her child was a dependent child and agreed to continued temporary custody at her arraignment hearing held on January 9, 2006. The child was subsequently adjudicated a dependent child as to Appellant when the matter came on for disposition on April 25, 2006, at which time temporary custody was again ordered to be continued. Thus, the juvenile court's April 25, 2006, entry adjudicating the child dependent and ordering temporary custody to remain with RCJFS was a final, appealable order. In the Matter ofC.G., Preble App. Nos. CA2007 030005 and 006, 2007-Ohio-4361 at ¶ 11.
 {¶ 22} A notice of appeal in a civil case must be filed within 30 days of the date of the entry of the judgment or order appealed from. App. R. 4. Appellant never appealed the dependency adjudication which continued *Page 12 
permanent custody of the child with RCJFS. Thus, she cannot now, on appeal of a subsequent grant of permanent custody, raise errors which occurred at the earlier hearing. In the Matter of C.G. at ¶ 12. Because Appellant did not timely appeal the lower court's April 25, 2006, entry, this Court is without jurisdiction to consider her first assignment of error and it is, therefore, overruled.
 {¶ 23} However, we nevertheless wish to briefly address the juvenile court's procedure with respect to Juv. R. 29(D). Juv. R. 29 sets forth the procedure that a trial court must follow upon accepting a plea of admission to the allegations of a complaint at an adjudicatory hearing. Juv. R. 29(D) specifically provides that a court:
 "shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
As explained by the court in In the Matter of C.G., supra, in order to comply with Juv. R. 29(D), the court must perform an on-the-record exchange with the party to determine whether his or her admission is knowing, intelligent and voluntary. Substantial compliance, rather than strict compliance, with the rule is required. In the Matter of C.G.
at ¶ 14. *Page 13 
 {¶ 24} A review of the transcript from the adjudicatory hearing reveals that although the juvenile court did engage in an on-the-record colloquy with Appellant, it failed to advise her, in accordance with Juv. R. 29(D)(2), that "by entering an admission [she] is waiving the right to challenge the witnesses and evidence against [her], to remain silent, and to introduce evidence at the adjudicatory hearing." Thus, substantial compliance with the rule was not accomplished. Nonetheless, because Appellant did not timely appeal these deficiencies, she has waived the argument for purposes of appeal. Accordingly, we are without jurisdiction to consider her argument and we must, therefore, overrule her first assignment of error.
 {¶ 25} In her second assignment of error, Appellant contends that she was denied due process by the failure of RCJFS to make reasonable reunification efforts. Specifically, Appellant contends that "reasonable reunification efforts include investigating potentially suitable relative placements." In support of her argument, Appellant relies on a recent holding by the Supreme Court of Ohio in In re C.F.,113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, as well as R.C. 2151.419. Appellee counters by arguing that the record reflects that RCJFS explored relative placement and concluded there were no willing or appropriate relatives with which to place the child. We agree with Appellee. *Page 14 
 {¶ 26} We initially address the issue of whether or not RCCS had a duty to make reasonable reunification efforts in a permanent custody case. The Supreme Court of Ohio has held that "except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must do so on a motion for permanent custody. However, the specific requirement to make reasonable efforts that is set forth in R.C.2151.419(A)(1) does not apply in an R.C. 2151.413 motion for permanent custody." In re C.F. at ¶ 4. Thus, Appellant's reliance on R.C. 2151.419 is misplaced.
 {¶ 27} Appellant claims that "the sister of appellant was known to RCJFS, yet the agency took no action to investigate this potential relative placement. Appellant further claims that "appellant's sister sought out RCCS, but was summarily and arbitrarily rebuffed by a caseworker who had already made up her mind that the child's best interests required permanent custody." A review of the record reveals that Appellant's sister contacted RCJFS and actually visited with the child weekly for a short period of time. However, during the time Appellant's sister was visiting with the child, Appellant's visitation with the child was sporadic and then completely stopped for a period exceeding ninety days. Based upon these facts, *Page 15 
caseworker Teresa Babb testified that "our agency did not feel that it is in Brandon's best interest just to be placed in the legal custody, that we needed to terminate parental rights." In trying to explain her decision, Babb also testified that she explained to Appellant's sister that the agency "was not in favor of just allowing or asking the Court to place B.D. in her legal custody [because they] thought it would be better to try to terminate parental rights because [they] were not having contact with Brittany." Once this was explained to Appellant's sister, she stopped visiting with the child.
 {¶ 28} In light of this testimony, we believe that RCJFS made satisfactory reunification efforts with respect to an attempted relative placement. The trial court found that no relative placement was available for the child, that the child needs and deserves a legally secure permanent placement, the child is adoptable and has the potential for secure permanent placement, and the child is unlikely to ever have a secure permanent placement without permanent custody being granted to the agency. In light of the foregoing testimony by Babb regarding relative placement, combined with the evidence in the record that the child had been in the temporary custody of RCJFS for 12 or more months of a consecutive 22 month period, that the child's father had abandoned him and that the child's mother had gone more than 90 days without contacting him, which also constitutes *Page 16 
abandonment[4], we believe that the trial court could properly conclude that RCJFS had made reasonable efforts in trying to investigate relative placement.
 {¶ 29} Thus, we conclude that the record contains competent, credible evidence that RCJFS made reasonable efforts to reunify this family, specifically by attempting to secure relative placement prior to the filing of a motion for permanent custody. Further, we have previously held that "a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. In the Matter of Keaton, Ross App. No. 04CA2785 and 2788, 2004-Ohio-6210; citing In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11, 2001-Ohio-2383. Accordingly, we find that Appellant's second assignment of error is without merit.
 {¶ 30} Appellant, in her third assignment of error, contends that the trial court erred in finding that RCJFS made reasonable reunification efforts, to include investigating potentially suitable relative placements. Appellant essentially incorporates by reference her arguments contained in her second assignment of error, but takes it a step further by now claiming the trial court had a duty to consider the possibility of relative placement, but that it did not *Page 17 
do so. Appellant contends that the record reveals that RCJFS made no effort in obtaining a suitable relative placement and that the court erred in finding that no relative placement was available, relying on R.C. 2151.412(G) in support of her contention. With respect to Appellant's reliance on R.C. 2151.412(G), we previously noted inKeaton, supra, that "some courts have recognized that R.C. 2151.412(G) govern's court's review of a case plan, not its decision regarding a permanent custody motion. Keaton at ¶ 63; citing In re Kierra D., Lucas App. No. L-03-1164, 2004-Ohio-277 and In re Harris (Nov. 2, 2000), Cuyahoga App. No. 76631, 2000 WL 1643569.
 {¶ 31} We have already concluded that the record contains competent, credible evidence that RCJFS made reasonable efforts to reunify this family, specifically by attempting to secure relative placement prior to the filing of a motion for permanent custody. A trial court's discretion with respect to child custody issues should generally be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the parties' lives. See, e.g. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 674 NE.2d 1159. Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement decision unless the trial court has acted in a manner that can be characterized as arbitrary, *Page 18 
unreasonable or capricious. See, generally Blakemore, supra The underlying rationale of giving deference to the trial court's finding is based upon the premise that the trial court judge is best able to view the witnesses and observe their demeanor, gestures, voice inflections, and to use those observations when weighing the testimony and evidence. Accordingly, and for the same reasons that we overruled Appellant's second assignment of error, we find that Appellant's third assignment of error has no merit.
 {¶ 32} In her fourth assignment of error, Appellant contends that the trial court erred in granting permanent custody in the absence of evidence of record either of the child's wishes concerning placement, or evidence that the child was incapable of expressing a preference. Appellant supports her argument by arguing that the guardian ad litem report contained no reference to the child's wishes. Appellant further argues that the child may well have been able to express his wishes regarding placement, relying on In re J. W., Franklin App. Nos. 06AP-864, 06AP-1062 and 06AP-875, 2007-Ohio-1419 (holding that the trial court was required to consider the wishes of a four year old childor find that he was not capable of expressing those wishes) (Emphasis added).
 {¶ 33} In In re J. W., the court noted that the guardian ad litem report failed to discuss the child's maturity or ability to express himself, the child's *Page 19 
wishes as to placement or the guardian's recommendation as to placement. Further, the trial court simply found that "[t]he wishes of the child are not expressed and not inconsistent with the position of the Guardian Ad Litem (GAL). The maturity of the child is age 4." Based upon this record, the J.W. court reasoned that the trial court's statement did not address the child's wishes or whether he was capable of expressing those wishes.
 {¶ 34} The case presently before this Court is factually distinguishable from J. W. in that in the present case, the guardian ad litem, in his final report, clearly determined that a grant of permanent custody was in the best interests of the child. Further, the record reflects that the child had just turned three years old at the time of the hearing on the motion for permanent custody. Based upon this information, the trial court specifically made a finding that "B.D. is too young to express his wishes with respect to this case." We find that although the child did not express his wishes, the guardian ad litem clearly recommended that the motion for permanent custody be granted. Further, trial court's finding that the child was too young to express his wishes complied with R.C. 2151.414(D)(2), which requires that the court consider "[t]he wishes of the child, as expressed directly by the child or through the guardian ad litem, with due regard for *Page 20 the maturity of the child." (Emphasis added). Accordingly, Appellant's fourth assignment of error is without merit.
 {¶ 35} In her fifth and final assignment of error Appellant contends that the judgment was against the manifest weight of the evidence. In her fifth assignment of error, Appellant essentially claims that the trial court's determination that a grant of permanent custody was in the best interest of the child was against the manifest weight of the evidence. In support of her claim, Appellant argues that "R.C. 2151.414
only permits a grant of permanent custody if it is shown by clear and convincing evidence that mother and child cannot be reunited within a reasonable time." Appellant further argues that none of the factors in R.C. 2151.414(E) exist in the present case. Appellee counters Appellant's argument by claiming that it proved three of the R.C. 2151.414(E) factors and that the trial court's determination that the child cannot and should not be reunified with his mother and father is supported by competent, credible evidence. We agree with Appellee, albeit for different reasons.
 {¶ 36} RC. 2151.414(B)(1) establishes a two-part test that must be applied before parental rights may be terminated and permanent custody awarded to children services. In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, 857 N.E.2d 532, at ¶ 31. First, a court must determine by clear *Page 21 
and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets forth the factors a court must consider in the best interests analysis. These factors are: "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 37} Under the second part of the R.C. 2151.414.(B)(1) permanent custody test, one of the following must apply: "(a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parent. (b) The child is abandoned. (c) The child is orphaned, and there are no relatives of the child who are able to *Page 22 
take permanent custody. (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 38} First, and contrary to Appellant's contention, it is important to note that "[p]ursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time." In re Riley, Washington App. No. 03CA16, 2003-Ohio-4108 (Citations omitted); See also, In the Matter ofJ.W., supra, at ¶ 15 (reasoning that "[b]ecause the record supports the trial court's decision to proceed under R.C. 2151.414(B)(1)(d), the trial court did not need to determine whether the child can or should be placed with either parent after a reasonable time under RC. 2151.414(B)(1)(a)) (Citations omitted). Thus, as further noted by this Court in In re Riley, supra, "when considering a permanent custody motion brought pursuant to RC. 2151.414(B)(1)(d), the only other consideration becomes the best interest of the child. As such, contrary to Appellant's argument, the trial court in the present case did not need to determine, and *Page 23 
did not determine, that the child could not or should not be returned to either parent within a reasonable period of time. It simply adopted the magistrate's finding that permanent custody was in the best interests of the child.
 {¶ 39} With respect to the first factor, the trial court noted that the child's interaction with his mother has been inconsistent and unreliable, that Appellant had gone more than ninety days without visiting the child at least once during the pendency of the case, that the child has no siblings and that his father has had no interaction with him. With respect to the second factor, the court noted that the child was too young to express his wishes. With respect to the third factor the trial court found that the child has been in foster care the majority of his life, approximately 19 of his first 24 months and also that he had been in the custody of RCJFS for twelve or more months of the consecutive twenty-two month period ending on or after March 18, 1999. With respect to the fourth factor, the trial court found that the child needs and deserves a legally secure permanent placement, is adoptable and is unlikely to ever have a secure permanent placement without permanent custody being granted to the agency. With respect to the fifth factor, whether or not any of the factors listed in R.C. 2151.414(E)(7)-(11) apply, the trial court found that (E)(10) applied in that the father had *Page 24 
abandoned the child and that the mother had gone more than 90 days without visiting the child, which, as set forth above, also constitutes abandonment.
 {¶ 40} As such, in reaching its decision that permanent custody was in the best interest of the child, the trial court considered each of the statutory best interest factors contained in R.C. 2151.414(D). Based upon our review of the record, we conclude that the trial court's determination that a grant of permanent custody was in the best interest of the child was based upon competent, credible evidence, was not against the manifest weight of the evidence, nor was it an abuse of discretion.
 {¶ 41} Accordingly, we affirm the decision of the trial court.
JUDGMENT AFFIRMED.
[2] The child's father, Danny Long, was served with summons and failed to appear at any of the scheduled hearings. A separate disposition hearing was held on April 17, 2006, wherein the child was adjudicated dependent as to the father.
[3] A review of the record indicates that the case plan required that Appellant (1) obtain a safe, stable home for the child for a period of three months; (2) maintain contact and follow the recommendations of her psychiatrist for at least three months; (3) visit with the child once a week at the agency until obtaining a home suitable for overnight visits; and (4) complete parenting classes.
[4] R.C. 2151.011(C)